The ALABAMA GREAT SOUTHERN RAILROAD *vs.* GILBERT.

The charter of a railroad company empowered it to condemn for right of way a stated number of feet in width of road-bed and on each side thereof, provided it did not interfere with any building. The company did not condemn any of the land of a land-owner on its line, but constructed its road through his land, and used the road-bed only. He built a house upon that part of his land near the track, but not in the occupancy of the company, and remained in the peaceable and adverse possession of it continuously for about nine years, when proceedings were taken by the company to condemn the land to the full extent of the right of way, including that built on :

*Held*, that this could not be done.

(*a.*) Charter rights antagonistic to rights of private property will be strictly construed ; and their exercise must be in strict compliance with the law granting them.

(*b.*) The right to condemn land on each side of the road-bed was a privilege which the company might exercise or not ; and when it failed to exercise such right, the land-owner was not prevented from using his land near the track.

*c.*, What a corporation first condemns, or buys, or takes as necessary for its franchise. it will be bound by as its election ; and the charter rights will be thereby exhausted, so far as the then existing charter vests it with power

(*d.*) A mere prescriptive title would suffice to bar the company from the right to condemn land on which a building had been erected.

November 20, 1883.

Railroads. Eminent Domain. Laws. Corporations. Prescription. Before Judge FAIN. Dade Superior Court. March Term, 1883.

Reported in the decision.

W. N. & J. P. JACOWAY; R. J. McCAMY, for plaintiff in error.

T. J. LUMPKIN; GRAHAM & GRAHAM, for defendant.

JACKSON, Chief Justice.

By the charter of the Alabama Great Southern Railroad Company, formerly the Wills Valley Railroad Company, the company is empowered, under the state's right of eminent domain, to condemn for right of way so many feet of width of road-bed, and each side thereof, provided it does not interfere with any building. Acts of 1854, p. 464. On defendant's land the company failed to take steps to condemn the land according to the charter, but constructed the road over defendant's land without doing so, and has been in the use and enjoyment of the road-bed alone since its construction. The defendant, in 1873, some nine years before proceedings of any sort were taken to condemn the land under the charter, built upon that part of his land near the track of the road, but not in the occupancy of the company, and has been in the peaceable and adverse possession of it continuously for that period.

In 1882, proceedings were begun in the court of ordinary to condemn the land to the full extent of the right of way, including that portion of his land so built upon by defendant. The case was taken by appeal to the superior court, and decided adversely to the company, whereupon it excepted, and brought the case to this court.

The question is, can the company now condemn the land with the buildings thereon, or rather the land so built upon?

The right of private property is very sacred in the eye of the law. It stands on the same foundation as the co-ordinate rights of personal liberty and personal security. It only yields to the right of eminent domain in the state, and it can be taken for public use only after just compensation. Constitution of Georgia, Code, §§4994, 4995, 5024.

It is upon the principle that railroads are for public use that private property can be condemned for their way over the lands of others, and provision is made in the charter of railroad companies for the manner of condemning it and the extent to which that condemnation can go, always upon just compensation, and the mode of ascertaining it. These charter rights, overriding, as they do, the high right of private property, are construed strictly; and the exercise of the right must, with equal strictness, be held to a rigid compliance with the law of its existence, the charter by which alone it can move. 5 *Ga.*, 561; 7 *Ib.*, 221; 49 *Ib.*, 151.

This charter grants this company the right to subject land to the purposes of this railway, but only naked land. Land on which buildings of any sort are erected, cannot be condemned on any terms whatever, against the will of the owner. Buildings are on this land of defendant; therefore it cannot be condemned under this charter.

But it is said that at the time the road-bed was con structed, the defendant had not erected the building in question, and that he built with knowledge that the company was entitled to condemn that part of his land whereon he did build. The reply is that the company saw fit to content itself with the road-bed only. It did not even condemn, under the charter, that much of defendant's property, but it was either given to the company, or bought by it from defendant, or the company was permitted by a sort of tacit license to use so much of defendant's property. Was he thereby prohibited or estopped' from using his own just as he chose—that which remained his, and

had not been touched? The company was not obliged to condemn and pay for all the width which the charter allowed—the entire fifty feet. How much of his own must this man conjecture that the company would take and pay him for, under the charter? How long must he wait (before using his own as he pleased) upon the action of the company?

We think that he had the right to reason, and believe that the company had all it wished for the exercise of its franchise, and to act upon such reason and belief, and build upon his own land not embraced within what the company had elected by its own conduct, as sufficient for its use under its charter.

The law favors *laches* in nobody. "*Vigilantibus non dormientibus jura subveniunt*" is its unvarying maxim. Certainly, in the exercise of a franchise, to take another's for its own use, it will not aid a sleepy corporation.

If the building had been where it is, when the road was constructed, the land could not have been condemned. The corporation slept over its rights until the property increased in value, and changed its character by being built upon, and now seeks to do what it could not have done had it been so valuable and improved then.

Besides, the authorities are to the effect that what a corporation first condemns, or buys, or takes as necessary for its franchise, it will be bound by as its election; and the chartered rights will be thereby exhausted, so far as the then existing charter vests it with power. Mills on Em. Dom., sec. 58; 35 Barb., 373; 9 Paige, 323; 10 Bush, 529; 17 Ohio, 340; 30 Maine, 498; 31 N. J., 205; Note to 1 American Railway Cases, 147.

It would seem to be immaterial whether it bought or condemned, or merely occupied as a trespasser or licensee. The principle assuredly must be the same, so far as respects the conduct of the owner of the property after the piece of it judged to be necessary by the corporation had been carved off. Indeed, it would be in reason stronger, when applied

to the company as a licensee gratuitously; and strongest, when applied to the company as a trespasser.

Moreover, if the defendant, though in possession under mere color of title, had been in such adverse and continuous possession more than seven years, with his building on this part of the land, and the company had not moved, he would have been protected. A mere prescriptive title, possession under a quit-claim deed, or any sort of color of title, would bar the company from the right to condemn this building and the ground thereunder. Shall not a perfect title have equal effect? Can the true owner, with perfect title, be condemned to give up his home, or his business house, or any other building, when one in under merely colorable title would be protected? Surely not.

Judgment affirmed.