The City Council of Augusta *et al. vs.* Walton, executor, *et al.*

1. A testator died in 1836. The eighth item of his will was as follows: "I give and devise to my kind, good and affectionate wife, Emily H. Tubman, the entire balance of my estate, of whatever kind or thing it may consist of. Now, in consideration of the unlimited confidence that I have in the discretion of my good wife, Emily H. Tubman, I do hereby constitute and appoint her my sole executrix of this will, with the full hope and belief that she will use every means in her power to carry every part of this my will into complete effect." (Then follow certain directions to his

executrix for obtaining a law to manumit the slaves of the testator, and, upon condition of obtaining such a law, for the presentation of $5,000 to the University of Georgia or the trustees thereof.) " And furthermore, I request that my executrix distribute amongst the poor of the county of Richmond two thousand dollars, and that all the real estate that I may die possessed of in the city of Augusta, after the death of my wife, be and is hereby given to the trustees of the Richmond County Academy, and their successors, the annual product to be by them appropriated to the erection of a poor-house in said county, and for the support of its inhabitants forever. Now, for the purpose of enabling my executrix to carry into full and complete effect every part of this my last will and testament according to my desires herein expressed, I do hereby authorize my executrix to make all sales and conveyances that may be necessary for the above mentioned purposes :"

*Held*, that it was not the intention of the testator to adopt the county poor-house, or to bestow his bounty upon it, or to confide to those having in charge the administration of the fund raised by taxation for the support of the county, the management of the property provided by him for a like purpose ; but he designed the erection of a separate establishment, to be located and controlled by agents of his own selection, who were to distribute and apply the income from the fund, in their discretion, as best to effect the purpose designated.

(*a.*) The judge of the city court of Richmond county, who is *ex officio* commissioner of roads and revenues of that county, having, in his official capacity, tendered himself as a suitable person to be appointed trustee to effectuate the wishes of the testator expressed in his will, and the chancellor, in the exercise of his discretion, having declined the offer so made, this court will not interfere.

2. Prior to 1854, the judge of the superior court had no power, by a proceeding in chambers, to accept the resignation of a trustee and appoint a successor.

(*a.*) Under the 8th item of the testator's will, the executrix was, during her life, the proper person to execute the trust created, and it did not devolve upon the trustees of the Academy of Richmond County and their successors until her death. Therefore there was no authority, during her lifetime, for the renunciation of the trust by them and the appointment of a successor, she not having been removed for mismanagement or abuse of the trust, and not having voluntarily resigned.

(*b.*) After the death of the executrix, the trust devolved upon the persons who might be the trustees of the Richmond County Academy, and not upon the corporation of which they were trustees, and the corporation, as such, had no right to renounce the trust.

(c.) If lapse of time can be relied on as conferring title to this character of trust, it cannot be applied here, since the city council, who make the claim, never had either actual or legal possession of the trust, and were never actually or legally engaged in looking after its affairs.

(d.) The city council of Augusta had no right, express or implied, under the laws of the State, to accept or administer this trust.

January 18, 1887.

Wills. Trusts and Trustees. Charitable Trusts. County Matters. Practice in Superior Court. Jurisdiction. Municipal Corporations. Before Judge RONEY. Richmond Superior Court. April Term, 1886.

Reported in the decision.

J. S. & W. T. DAVIDSON; C. H. COHEN; S. F. WEBB, for plaintiffs in error.

FRANK H. MILLER; J. B. CUMMING; BRYAN CUMMING, for defendants.

HALL, Justice.

Richard Tubman, late of Richmond county, died testate in the month of November, 1836, leaving his wife, Mrs. Emily H. Tubman, his sole executrix, who, having proved his will and qualified as such executrix, took letters testamentary from the inferior court, sitting as a court of ordinary for said county. The item of his will which creates the trust, the subject of this controversy, is as follows:

"*Eighth.* I give and devise to my kind, good and affectionate wife, Emily H. Tubman, the entire balance of my estate, of whatever kind or thing it may consist of. Now, in consideration of the unlimited confidence that I have in the discretion of my good wife, Emily H. Tubman, I do hereby constitute and appoint her my sole executrix of this my will, with the full hope and belief that she will use every means in her power to carry every part of this my will into complete effect. I therefore desire that she, immediately after my decease, apply to the legislature of this State to pass a law (if they, in their wisdom, should deem it expedient or politic) to enable her to eman-

cipate and make free in this State all the negroes I may die possessed of, except Anna and all her children, Charlotte and all her children, and Fanny and all her children.   I therefore set apart, out of that part of my estate heretofore given to my wife, ten thousand dollars, five thousand of which sum I request my executrix to present to the University of the State of Georgia, or to the trustees thereof, provided, however, the legislature do pass the above described law enabling her to manumit my negroes as aforesaid; if not, then the whole of the ten thousand dollars to be applied to the transportation of the said negroes to such part of the United States as my executrix may deem the laws best calculated to secure to them the rights and immunities of free persons; the balance then, if any is left, shall be divided amongst them in equal shares; but if the legislature should pass the above described law, then the other five thousand dollars shall be divided among them in equal shares.   And furthermore, I request that my executrix distribute amongst the poor of the county of Richmond two thousand dollars.   And that all the real estate that I may die possessed of in the city of Augusta, after the death of my wife, be and is hereby given to the trustees of the Richmond County Academy, and their successors, the annual product to be by them appropriated to the erection of a poor-house in said county, and for the support of its inhabitants forever.   Now, for the purpose of enabling my executrix to carry into full and complete effect every part of this my last will and testament according to my desires herein expressed, I do hereby authorize my executrix to make all sales and conveyances that may be necessary for the above mentioned purposes."

Mrs. Tubman, without having fully discharged the trusts of this will, and without having obtained letters dismissory as executrix thereof, died testate on the 9th day of June, 1885, leaving John M. Walton her executor; and having qualified as such, he thereby became the executor of Richard Tubman's will.   The persons constituting the board of trustees of Richmond County Academy, acting in their corporate capacity, renounced this trust in the year 1838, and notified the judge of the superior court of Richmond county of their renunciation, and prayed the appointment of another trustee to act in their stead; and the judge, at chambers, but (so far as appears) without any notification to Mrs. Tubman or any other person having an interest under the will of Richard Tubman, on the eleventh day of April, 1838, appointed the City Council of Augusta

as the successor in the trust of the " Trustees of Richmond County Academy." The City Council of Augusta, though it accepted the appointment, never took possession of the . trust property, nor interfered in any manner in the administration of the trust, except that in the year 1844, they executed a lease in perpetuity to a portion of the real estate embraced in this item of the will to the executors of one Samuel Hale, to whom Mrs. Tubman, in her lifetime, had previously sold and conveyed her life estate in the premises.   Upon the death of Mrs. Tubman, the trustees of Richmond County Academy rescinded the resolution of their predecessors renouncing the trust, and insist upon their right to execute it, alleging, as the ground of their action, that the trusts did not devolve upon them until the termination of Mrs. Tubman's life estate.   Both they and the city council of Augusta made a demand upon Walton, the executor, for the property belonging to the trust, who thereupon filed his bill, calling upon them to interplead, and praying the direction of the court touching the matter, and for other appropriate relief.   Pending this bill of interpleader, the Hon. William F. Eve, as judge of the city court of Richmond county and *ex officio* commissioner of roads and revenues of said county, intervened and claimed, in his official capacity, the right to administer this trust, and prayed his appointment as trustee on the ground that, under the law creating him commissioner, he was charged with the duty of providing for the poor of the county, and was the only proper custodian of funds belonging to them, or which had been donated and set apart for their support. When the case came on to be heard, upon the bill, answers and proofs, the chancellor rejected the claims of each of the other claimants to the trust, and confirmed the appointment made by the will of Richard Tubman of the " Trustees of Richmond County Academy," decreeing,

1. " That John M. Walton, as executor of Richard Tubman, who is now in the possession of the realty set forth in the bill, is ordered, as such executor, to convey, pursuant to the terms of the will of his

testator, all the real estate in the city of Augusta possessed by Richard Tubman at the time of his death, November, 1836, and fully described in the bill, to the trustees of the Academy of Richmond county, who was appointed by the testator, and which appointment is now concurred in, ratified and confirmed by this court. That the said complainant is also ordered and directed to transfer to the said trustees all the income received by him as rental, or from the use and occupation of said realty from the death of Emily H. Tubman, June 9, 1885, save and except the expenses incurred in repairs upon the realty, taxes, insurance, his commissions on income received, his counsel fee of five hundred dollars, and the cost of this proceeeding.

2. That the trustees of the Academy of Richmond county and their successors are hereby ordered and directed to carry into effect the provisions of said will, and to account with and receipt to the said complainant for the real estate described in the bill, and the income received by him since the death of Emily H. Tubman."

To this decree each of the defendants, the City Council of Augusta, and Judge Eve, as commissioner of roads and revenues of Richmond county, excepted, and each brought the case to this court by separate bills of exceptions and writs of error.

1. The interposition of the county commissioner and his offer to assume and execute the trust was purely vicarious, founded upon no claim of right in law or fact whatever. It is evident that the testator did not contemplate the adoption of the county poor-house, or mean to bestow his bounty upon it, and to confide to those having in charge the administration of the fund raised by taxation for the support of the poor of the county, the management of the property provided by him for a like purpose, but he designed the erection of a separate establishment to be located and controlled by agents of his own selection, and who were to distribute and apply the income from the fund, in their discretion, as best to effect the pious and benevolent purpose designated. The proper inference to be drawn from this provision of the will is, as it seems to us, that the testator deliberately passed by the county corporation and the agents selected by it for the performance of this public duty, and conferred the power upon others,

whom he preferred to dispense his charity. His expressed object was to establish out of his means, to be supported by the income of the property dedicated by his will to that use, an asylum for the poor of Richmond county. There was no direct gift to the county, or to the authorities empowered to direct its municipal affairs, and we have seen that none could be implied from the terms of the bequest. The commissioner of roads and revenues of the county, instead of being a party in any legal sense of that term, simply tenders himself, acting in an official and not in his personal character, as a suitable trustee to effectuate the wishes of the testator as expressed in his will. The court differs with the commissioner in the view he takes of the matter, and sees proper to decline his offer, thinking, in the exercise of his discretion and acting within the limit of the law conferring upon him the power to choose where no legal claim or right exists, and where the trust for any cause becomes vacant, that that officer is not a proper person to carry it into effect. Code, §2320. This court has no right to control the exercise of the judge's discretion in making the appointment, unless it is made plainly to appear that it has been flagrantly abused, and in this case no such complaint is made. We see no error, therefore, which we can review in rejecting the offer of the commissioner of roads and revenues of Richmond county to become the trustee of the property, and direct that the judgment to which he has excepted be affirmed.

2. The city council of Augusta insists upon its right to retain the trust under the appointment made by the judge of the superior court in the year 1838; and while it concedes that the appointment may have been irregular and erroneous, or perhaps even void, under the law as it then existed, because of its having been made in vacation and without notice to the parties in interest, yet it is contended that it was a good foundation for an adverse claim as against another party who claimed to exercise the right when the city council had been in its quiet, undisturbed, notorious

and continuous possession for nearly half a century; and
that in analogy to other cases, this conferred on it a good *de
facto* title to the office, and finally that the original ap-
pointees having once renounced the trusts and a successor
having been appointed and assumed and exercised its
powers and privileges, they could not, nor could the court
empower them to resume it; to which the trustees of Rich-
mond County Academy reply, that when this appointment
was made, there was no vacancy in the trust to be filled;
that by the terms of the will, the executrix was charged
as well with the execution of this as other trusts declared
by the 8th item thereof; that the property in question was
bequeathed to the persons who happened to be the trustees
of Richmond County Academy, and by the express terms
of the devise, they could become trustees only when the
life estate of the executrix terminated; that it was never
bequeathed to the corporation of which they were trustees;
that when the corporation renounced, the trust had never
devolved on it and could at no time have inured to it as a
corporation; they renounced something they never had,
and there was nothing more than a bare possibility that
the distinguished gentlemen then composing the board of
trustees of the academy, as individuals, would ever have
the right to manage this trust; this depended upon their
surviving Mrs. Tubman, the executrix, and being at that
time members of that board; when the renunciation was
made, it was by a party other than such as was designated
to administer that fund; that the corporation upon which
it was conferred had no legal or actual capacity to admin-
ister the trust, and its attempt to do so was in excess
of the power of a municipal corporation, charged with the
management of the affairs of the city; that it could not
exceed the power conferred by the charter, or go beyond
the boundaries of the city, as defined and fixed by law, to
execute any power, unless expressly or by necessary im-
plication given it by legislative enactment; that this cor-
poration could not, as a corporation, be made liable for

any abuse of the trust, or waste or diversion of the funds belonging to the same ; and that a mere possession of a void appointment, as this was, could not confer a right to retain it, notwithstanding the lapse of time amounting to nearly fifty years, and especially as it was not shown that during all that time it ever undertook to control actively or meddle with the property, except as might be inferred from a single act having no material influence upon the issue, and of which neither Mrs. Tubman nor the public nor any party having an interest in the trust property had any other notice than that which might be implied from the conveyance of her life estate by Mrs. Tubman to a small portion of the property to Hale, and the registry of the perpetual lease made by the city council to his executors.

According to the law as it existed in 1838, the judge of the superior court had no power, by a proceeding in chambers, to bestow this trust upon the city council of Augusta. *Arrington vs. Cherry*, 10 *Ga.* 433 ; *Hill vs. Printup*, 48 *Id.* 453 ; *Milledge vs. Bryan*, 49 *Id.* 397–411 ; *Askew vs. Patterson*, 53 *Id.* 213 ; *Knapp vs. Harris et al.*, 60 *Id.* 399.

The jurisdiction for this purpose was never conferred upon a judge sitting in chambers until 1854, as appears from the foregoing cases. But even if he had been authorized to exercise the jurisdiction at that time and in the manner it was exercised, there was no case for calling it into operation. There was at that time no vacancy in the office of trustee to be filled. The fair import of the language employed in item 8th of the will is, that the executrix, in whose discretion the testator expresses " unlimited confidence," would "use every means in her power to carry every part of his will into complete effect." To attain this end, ample power is given, and to secure to her its uninterrupted control and management, he declares in express terms that the property in question, "after the death of my said wife, be and is hereby given to the trustees of the Richmond County Academy and their successors."

The trust, then, did not devolve upon the persons mentioned as her successors until Mrs. Tubman's death; she was, during her life, the proper party to execute it; she never voluntarily relinquished it, nor was she deprived of it in consequence of any abuse or improper management; and except for such causes, no court or other power could take it out of her hands, nor without her consent could others be joined with her, nor was there any necessity for their appointment to enable them to superintend her and prevent her from abusing the trust or wasting the property; any citizen might have invoked the interposition of chancery to restrain her abuse. The trustees of the academy were clearly designated as her successors. When her control over the trust ceased by the contemplated event, their control commenced, but not before that time by the very terms of the will. Nay, more, if more was wanted to show that such was the testator's purpose, she is authorized to make all sales and conveyances that may be necessary to enable her to carry into full and complete effect every part of the will and testament, according to testator's desires as therein expressed, and this is the very last clause of the item under consideration and of the will. To give effect to the words of this will, as well as the evident intention of the testator, we are forced to the conclusion that, while this executrix lived and acted in the trust, she alone was authorized to administer it, and consequently that she was the trustee to whom it was exclusively confided, and before her death, no one had any right to wrest it from her custody, except for the causes above set forth, or unless she became incapacitated to manage it. While she lived, no trustee was wanted, and no case was made for the interposition of the court to appoint a trustee in her stead. In any view that can be taken, this renunciation by the Richmond County Academy was premature, and was made in advance of the devolution of the trust upon them. Code, §§2319, 2320.

Interpreting this item of the will, especially as to the

charitable bequest for the poor of Richmond county, by the context, it would seem clear that the testator was well apprised of the distinction existing between a corporation and the persons composing its board of officers. By the 3d item, a bequest is made to Saint Paul's Episcopal Church, of Augusta, of certain shares of bank stock, with the direction that it be transferred by the executrix to the wardens and vestry of the church, " to be held by them, and their successors in office, in their corporate capacity ". for certain specified uses. Again by the 2d item of the will, a bequest is made for the use of the free school of the city of Augusta, and authority is conferred upon the managers of the same to appropriate the income arising from the fund to its support. It seems to us manifest that it was the object of the testator to knit this trust to the office of the trustees of Richmond County Academy, in order to make provision in that way for its permanent continuance, without the necessity of resorting to courts or other tribunals to supply vacancies when any happened; this power of selection and perpetuation was in the body appointing the trustees of the corporation; they were to designate the persons who were to discharge the duties it imposes. There are many instances of similar arrangements which have been generally held to indicate the object attributed to this testator in making them.

What has been decided will go far to dispose of two other questions made in this case, viz. the power to resume after there has been a renunciation of the trust and a successor appointed, and the effect of the lapse of time in confirming the appointment of successors. It has been sufficiently shown that the corporation renouncing was never designated as trustee, and even if it had been, its right to exercise the power of the trust was only inchoate when the renunciation was made, and for this reason, the case does not fall within the rule invoked by counsel for the city.

If lapse of time can ever be relied on as conferring title

to this character of trust, it cannot be applied here, since the city council never had either the actual or legal possession of the trust, and was never actually or legally engaged in looking after or administering its affairs ; consequently there is no point established from which time begins to run.

We are further of opinion that the municipal authorities of the city of Augusta had no right, express or implied, under the laws of the State, either to accept or administer this trust. The case of Vidal vs. Girard's Executor, 2 Howard, 127, with others cited on the brief of counsel, is directly in point. It is not to be understood, from what is here said, that the legislature cannot confer such power on it; all that is meant is that it has not heretofore so done.

Judgment affirmed.