Augusta & Savannah Railroad Company *v.* Augusta Southern Railroad Company *et al.*, and *vice versa.*

1. The words, " No other railroad shall be made to run from the city of Augusta, or from the junction of this railroad with the Central Railroad, and in the same direction, within twenty miles of said road, without the assent of said company," in the act of December 21, 1839 (Acts 1839, p. 89), amending the act of December 31st, 1838, for the incorporation of the Augusta and Waynesboro Railroad, did not prohibit the building without the assent of said company of a railroad from Augusta to Sandersville, although the latter railroad at and near its Augusta terminus necessarily came within less than twenty miles of the railroad first named. The object of the words above quoted was to prevent the building, without the first company's consent, of a railroad parallel to and within twenty miles of the Augusta and Waynesboro Railroad between its terminal points, and not to prevent the building from either of such terminal points of a railroad such as that from Augusta to Sandersville, which does run in a direction different from that of the Augusta and Waynesboro Railroad from Augusta. This is true although the new railroad must, in converging to or from the terminal point, approach within less than twenty miles of the railroad first chartered.

2. License or permission by one railroad company to another to use or occupy a portion of the right of way of the former, the licensee at the time having and operating a narrow gauge railroad, would not authorize such licensee to broaden its gauge and operate a standard gauge railroad on the right of way of the licensor.

3. The rulings announced in the preceding head-notes practically dispose of all the controlling questions in this case, and result in a general affirmance of the judgment below.

August 12, 1895.

Petition for injunction. Before Judge Callaway. Richmond county. June 11, 1895.

Frank H. Miller, Joseph B. Cumming and William K. Miller, for plaintiff.

Leonard Phinizy, Boykin Wright, Lawton & Cunningham and Black & Verdery, for defendants.

Simmons, Chief Justice.

In 1838 the legislature incorporated the Augusta & Waynesboro Railroad, which, according to the charter, was to run "from the city of Augusta to Waynesboro and thence to suitable and proper point of junction with the Central Railroad." In 1839 the legislature amended the charter, and added: "No other railroad shall be made to run from the city of Augusta, or from the junction of this railroad with the Central Railroad, and in the same direction, within twenty miles of said road, without the assent of said company." (Acts 1839, p. 89.) In 1847 Millen was selected as the point of junction with the Central Railroad, from which the road was to start to Augusta. The name of the Augusta & Waynesboro Railroad was subsequently changed to the Augusta & Savannah Railroad Company. In 1852 the legislature authorized the Central Railroad and Banking Company to lease this railroad, and in 1862 that company did lease it. In 1884 the Augusta, Gibson & Sandersville Railroad Company was incorporated under the general railroad incorporation law. Its line of road was to run from Augusta to Sandersville. In the same year, the Central Railroad and Banking Company, the lessee of the Augusta and Savannah Railroad, gave permission, by a resolution of its board of directors, to the Augusta, Gibson & Sandersville Railroad Company to lay its track on the right of way of the Augusta & Savannah Railroad for a distance of one mile from the city limits of Augusta. At the time this permission was granted, the Augusta, Gibson & Sandersville Railroad Company was building a narrow gauge railroad. Subsequently all these railroads were placed in the hands of receivers,

and the Augusta, Gibson & Sandersville Railroad Company having defaulted in the payment of interest, the mortgage given to secure its bonds was foreclosed and the road was sold. The road was purchased by the bondholders and a new company incorporated to operate the same, under the name of the Augusta Southern Railroad Company. The new company proceeded to change the road from a narrow gauge to a broad gauge over the whole line, including that part of it on the right of way of the Augusta & Savannah Railroad. The latter company, learning of the intention to change the gauge, gave notice that it did not consent to the change on that part of the road lying on its right of way, and directed the Augusta Southern Railroad Company to desist therefrom. The Augusta Southern refused to desist, and the Augusta & Savannah Railroad Company filed its equitable petition seeking to enjoin the Augusta Southern from the use of its right of way.

1. The first question to be determined is, whether the building and running of the Augusta Southern Railroad is in violation of the chartered rights of the Augusta & Savannah Railroad Company, under that clause of the charter which declares that "No other railroad shall be made to run from the city of Augusta, or from the junction of this railroad with the Central Railroad, and in the same direction, within twenty miles of said road, without the assent of said company." It will be seen from the map of the State, that these three railroads make almost a triangle, the Augusta & Savannah running southward to Millen, its point of junction with the Central, and the Augusta Southern converging from it near Augusta and running in a southwesterly direction to Tennille, three miles from Sandersville, where it connects with the Central. Between Millen and Tennille the Central runs through Burke, Jefferson and Washington counties, a distance of about forty miles.

In our opinion the building and running of the Augusta Southern Railroad does not interfere with the chartered rights of the Augusta & Savannah.    We think the clause of the charter above quoted meant that no other railroad than the Augusta & Savannah should run from its terminus at Augusta to its terminus at Millen and in the same direction within twenty miles from the Augusta & Savannah, the object being to prevent the building of a competing line between these points which should run within that distance of it.    It is true that the Augusta Southern does run within twenty miles of it near Augusta, but we cannot conceive that the legislature intended by this clause of the charter to prevent any other railroad from running out of Augusta in the same general direction.    Exclusive grants of this character are to be construed strictly, and will not be extended further than their terms require.

2. As above recited, the lessee of the Augusta & Savannah Railroad gave permission to the Augusta, Gibson & Sandersville Railroad Company to lay its track on the right of way of the former.    It appears that at the time this permission was given, the Augusta, Gibson & Sandersville Railroad Company had built and was operating a narrow gauge railroad.    After it was sold under the mortgage and was reorganized under the name of the Augusta Southern Railroad Co., it undertook to broaden the gauge of its road and still use the right of way of the Augusta & Savannah Railroad.    Under the facts disclosed by the record, we think the permission given was a mere license.    A license, as a term of real estate law, is defined to be an authority to do a particular act or series of acts upon another's land without possessing any estate therein.    "The licensee has the right to do any act which is necessary for the full enjoyment of the license, but the terms of the license must be strictly followed and cannot be extended or varied."

13 Am. & Eng. Enc. of Law, 539, 544. We are of the opinion that, under the facts existing at the time the license in question was granted, it was a license only for a narrow gauge track. The licensor could hardly have intended it to apply to a broad gauge railroad, for none such was then in operation or being built by the licensee. Permission to occupy the right of way of the licensor with a railroad of a certain gauge, under the rule above stated, could not be varied or extended by the licensee so as to authorize the use of a broader gauge. The licensor might have been quite willing to grant a license for a narrow gauge road, but unwilling to grant it for a broad gauge road. The former would not be a competitor to the same extent as the latter. One might be willing to grant to a neighbor a foot-path through his field, but very unwilling to grant a license for a wagon road, and if a license should be granted for a foot-path the licensee clearly could not extend the license so as to make a wagon road through his neighbor's field. These two points are the controlling questions in the case, and we do not deem it necessary to discuss the other points made in the main bill of exceptions or in the cross-bill. Judgment on both is *Affirmed.*