18552. FULTON COUNTY FEDERAL SAVINGS & LOAN ASSOCIATION *v.* SIMMONS, Clerk.

ARGUED APRIL 13, 1954—DECIDED APRIL 13, 1954—
REHEARING DENIED MAY 13, 1954.

*John H. Bowman, Jr., Crenshaw, Hansell, Ware & Brandon,* for plaintiff in error.

*Alex W. Smith,* for parties at interest not parties to record.

*Harold Sheats,* contra.

HEAD, Justice. In this case the "Intangible Property Tax Act," approved December 22, 1953 (Ga. L. 1953, Nov.-Dec. Sess., pp. 379-390), was construed by the able trial judge against the plaintiff's contentions that under the terms of the act it is exempted from the payment of the tax on "long term notes secured by real estate."

The Intangible Property Tax Act of 1953 is divided into three parts. In Part I, §§ 1 and 2, a tax is levied on certain types of intangibles as classified by the act approved December 27, 1937 (Ga. L. 1937-38, Ex. Sess., pp. 156-170; Code, Ann. Supp., §§ 92-113—92-160). Beginning with Part I, § 3, "long term notes secured by real estate" are defined, and a tax is levied of $1.50 on each $500 or fraction thereof of the face amount of the note secured by deed to secure debt, mortgage, or bond for title. It is made the duty of the clerk of the superior court to collect the sums provided by the act prior to the recording of the deed to secure debt, mortgage, bond for title, or other form of security, and to remit the amounts collected to the State Revenue Commissioner. It is provided that a failure to pay the tax levied by the act shall constitute a bar to the collection of the indebtedness, or the exercise of any power of sale contained in the instrument by suit or foreclosure. A method is provided for the removal of the bar to foreclosure by the payment of certain interest and penalties.

Part II, § 1, provides that, beginning with the calendar year 1954, and each year thereafter, every building and loan association, and every Federal savings and loan association, having its office or place of business in this State "shall return its net worth at full market value to the tax receiver of the county in which the principal office of such savings and loan association is situated," and net worth is defined "as all surplus, undivided profit and reserves exclusive of the minimum statutory Federal insurance reserve." Part II, § 2, provides that such savings and loan association shall make a like return for taxation to the municipal corporation in which its principal office or place of business is located. Under Part II, § 3, the return to be made is to begin with the year 1954, and to be made each year thereafter, and in Part II, § 4, it is provided that the net worth of every savings and loan association described in Part II, § 1, shall be subject to ad valorem taxation by the State, county, and municipality in which its principal office is located in the same manner as other property is subject to taxation, "and such property shall no longer be exempt from ad valorem taxation."

In Part III, §§ 1 and 2, it is provided: "Section 1. All banks, banking associations, trust companies doing a banking business, and savings banks created and incorporated under the laws of this State, and all building and loan associations incorporated under the Building and Loan Act, approved December 24, 1937, and all building and loan associations incorporated under Ch. 16-2 of the Code of Georgia of 1933, and all Federal savings and loan associations having their principal offices or places of business in this State, shall have the same immunities and exemptions as national banks and banking associations created and incorporated under the laws of the United States and located in this State. Section 2. Nothing in Part II of this Act or in Section 1 of Part III of this Act shall be construed to relieve savings and loan associations from the tax on real estate held or owned by them, but they shall return said real estate at its true market value in the county where located. Provided, however, that when real estate is fully paid for, the value at which it is returned for taxation by the savings and loan association which owns it may be deducted from the full market value of the net worth of such savings and loan association,

and if said real estate is not fully paid for, only the value at which the equity owned by them therein is returned for taxation shall be deducted from the full market value of their net worth. Branch savings and loan associations shall be taxed on the full market value of the net worth arising from their operation, in the counties, municipalities and districts in which they are located, and the parent association shall be relieved of taxation to the extent of such net worth."

In this case the plaintiff relies on the language in Part III, § 1, as follows: "All Federal savings and loan associations having their principal offices or places of business in this State, shall have the same immunities and exemptions as national banks and banking associations created and incorporated under the laws of the United States and located in this State."

The rules of construction applicable in the present case are fixed and certain. If an act imposing taxes is of doubtful or uncertain meaning, it is to be strictly construed against the government. *Mayor &c. of Savannah* v. *Hartridge*, 8 *Ga.* 23; *Case-Fowler Lumber Co.* v. *Winslett*, 168 *Ga.* 808 (149 S. E. 211); *Mystyle Hosiery Shops* v. *Harrison*, 171 *Ga.* 430 (155 S. E. 765); *Davison* v. *Woolworth Co.*, 186 *Ga.* 663 (198 S. E. 738, 118 A. L. R. 1363); *Mayor &c. of Savannah* v. *Savannah Electric &c. Co.*, 205 *Ga.* 429 (54 S. E. 2d 260). Exemptions from taxation are to be strictly construed against the taxpayer, and unless the language clearly grants the exemption it is the duty of this court to rule in favor of the State. *Thompson* v. *Atlantic Coast Line R. Co.*, 200 *Ga.* 856 (38 S. E. 2d 774); *Davis* v. *City of Atlanta*, 206 *Ga.* 652, 655 (58 S. E. 2d 140). The final test is that, regardless of how unusual the language of the statute may be, the legislative intent manifested by it must be ascertained and enforced as the law. *Davison* v. *Woolworth Co.*, supra (at page 665).

The General Assembly in enacting this tax statute divided it into three parts, each part of which starts with a new numbered section one. It must be assumed that the General Assembly intended that its division of the act should have full force and effect. While the word "part" has many definitions, as used in this act it means "a formal or distinctive division." Webster's New International Dictionary, 2d ed., p. 1781. Part I ends with

§ 18, which provides in part: "Notwithstanding any other provision of this Act to the contrary, it is the intention of the General Assembly of Georgia that long term notes secured by real estate shall be taxed." The exemption clause relied upon by the plaintiff does not refer back, directly or by inference, to this provision in Part I, § 18. In Part II, § 1, a new method of taxation for a Federal savings and loan association is stated, in that it "shall return its net worth at full market value."

Code § 92-2407 purports to provide a method of taxation applicable to building and loan associations. *Elder* v. *Home Building & Loan Assn.*, 188 *Ga.* 113 (3 S. E. 2d 75, 122 A. L. R. 738). The General Assembly is not, by the act of 1953, providing two separate statutes for ad valorem taxation of building and loan associations. In order to avoid uncertainty and doubt, the General Assembly declared, in Part III, what it meant by the new ad valorem tax on net worth, and in doing so, stated that Federal savings and loan associations "shall have the same immunities and exemptions as national banks." Part III, § 2, provides a method similar to that of taxing national banks, such banks being required to return their real estate at its fair market value, which fair market value is to be deducted from the value of the shares of its stock. See Code § 92-2406, and *Goodwin* v. *Citizens & Southern Nat. Bank*, 209 *Ga.* 908 (76 S. E. 2d 620). In the case of building and loan associations, the term "net worth" is used in place of "market value," applicable to national banks. Taxation at market value of shares in a national bank and taxation at "net worth" of building and loan associations under the method provided in Part III, § 2, would not be a dissimilar method of taxation. By the use of the words "same immunities and exemptions" in Part III, § 1, when applied to Part III, § 2, the General Assembly intended that building and loan associations should pay an ad valorem tax on the same basis and in a manner equal to national banks. The immunities and exemptions referred to in Part III, § 1, could have no other application, since Part III, § 1, does not by its terms or by inference apply to any provision in Part I.

There is nothing to show a legislative intent to disregard the provisions of Part I, § 18, or of Part I, § 12, both of which would be nothing more than surplusage if it was intended by the Gen-

eral Assembly that Federal savings and loan associations should not pay the tax on long term notes. The General Assembly gave the words "same immunities and exemptions" application only to Parts II and III of the act, which impose, in effect, the same ad valorem tax on the net worth of building and loan associations as is imposed on the market value of shares in national banks.

The "same immunities and exemptions" applicable to national banks was applied by the General Assembly to the method of taxation for ad valorem purposes. National banks are not now, and have not been since the act of Congress of 1864, exempt from ad valorem taxation by the States. It is true that Congress has restricted the method of such ad valorem taxation, and it is likewise true that the General Assembly has restricted the method for ad valorem taxation of building and loan associations. Clearly, nothing more was intended and nothing more was done by the General Assembly under the act here reviewed. The trial judge did not err in sustaining the demurrers to the petition.

*Judgment affirmed. Justices Candler, Almand and Sutton, and Judges Vaughn and Shaw concur. Chief Justice Duckworth dissents.*

ALMAND, Justice, concurring. I concur in all that is said in the majority opinion, but wish to add one further reason as to why I am of the opinion that the judgment is correct.

Taking the entire act as a whole in endeavoring to find the intention of the legislature, it is apparent that the over-all intention of the legislature was to tax long term notes secured by real estate, and that, when this recording tax was paid, whether the debt thereby secured falls due 3 years and 1 day from the date thereof, or 20 years, the owner was relieved from the payment of any other tax of any kind, nature, or description. Section 13 of Part 1 of the act expressly provides that, when this recording tax is paid on account of long term notes secured by real estate, such shall be exclusive of all other taxes thereon, and "such intangible property shall not be taxed in any other manner by the State, or any county or municipality of the State, nor shall the owner or holder thereof be required to pay any other tax thereon." It is plainly evident from this pro-

vision that, when a building and loan association returns its net worth at its full market value to the taxing authority under Part 2 of the act, the amount of its long term notes secured by real estate would not be computed as a part of its net worth, because, having paid the recording tax, such long term notes would not be subject to further taxation. This provision of the act thereby nullifies the contention on the part of the building and loan association that the same property is doubly taxed. As I view it, this construction does not impose any undue hardship on the plaintiff in error, but actually operates to its benefit, for the reason that, when it pays the recording tax on a long term note secured by real estate, it is relieved from paying any further taxes during the life of the secured debt, but if the plaintiff in error is relieved from paying the recording tax, it is inescapable that it would have to include such long term note as a part of its net worth, whereby it would have to pay a tax annually during the life of the debt. It thus seems to me that the construction which the majority of the court places upon this act operates to the benefit of the plaintiff in error rather than to its detriment.

DUCKWORTH, Chief Justice, dissenting. The sole and only "exemption" or "immunity" national banks have is that, when the State adopts one of the four different methods of taxation consented to by Congress (12 U. S. C. A. § 548), the bank is exempt or immune from any of the other methods of taxation. When the present act provides that building and loan associations, etc., shall have the same exemptions and immunities granted national banks, it must mean that they can be subjected to one and only one of the specific methods of taxation. *Goodwin* v. *Citizens & Southern Nat. Bank,* 209 *Ga.* 908 (76 S. E. 2d 620). Therefore, when the act does tax the net worth, it can not impose a further tax if the exemption clause is to have any meaning whatever.