25779. HOSPITAL AUTHORITY OF ALBANY et al.
v. STEWART, Sheriff, et al.

Argued May 11, 1970—Decided June 8, 1970—
Rehearing denied July 9, 1970.

*Divine, Busbee & Wilkin, George D. Busbee, E. B. Wilkin, Jr.,* for appellants.

*Burt & Burt, W. H. Burt, Donald D. Rentz,* for appellees.

NICHOLS, Justice. The Court of Appeals has certified the following question to the Supreme Court: "Is real property held and owned by a public hospital authority, created under and by virtue of the Hospital Authorities Law (Ga. L. 1941, p. 241, as amended, and as superseded by Ga. L. 1964, pp. 499, 598, as amended (*Code Ann.* § 88-1801 et seq.)), 'public property' within the meaning of the Constitution of 1945, Art. VII, Sec. I, Par. IV (*Code Ann.* § 2-5404) and Ga. L. 1946, p. 12, as amended (*Code Ann.* § 92-201) so as to be exempt from ad valorem taxation, where the property itself is not a part of the hospital but its income is properly devoted to public purposes (hospital operations) in the furtherance of the legitimate functions of the hospital authority?

"See *Code Ann.* §§ 88-1802 (a), 1803, 1805; *Code Ann.* § 87-802 (b) (d); *Undercofler v. Hospital Authority of Forsyth County,* 221 Ga. 501 (145 SE2d 487); compare *Culbreth v. Southwest Georgia Regional Housing Authority,* 199 Ga. 183 (33 SE2d 684) (and Ga. L. 1937, p. 210, as amended; §§ 4, 8, 21), and *Sigman v. Brunswick Port Authority,* 214 Ga. 332 (104 SE2d 467) (and Ga. L. 1945, p. 1023, as amended by Ga. L. 1958, p. 82, §§ 2, 15) with *Sheffield v. State School Bldg. Authority,* 208 Ga. 575, 582 (4) (68 SE2d 590) (and Ga. L. 1951, p. 241, §§ 2, 21), and *McLucas v. State Bridge Building Authority,* 210 Ga. 1, 8 (3) (77 SE2d 531) (and Ga. L. 1953, p. 626, §§ 2, 30). See also *Stegall v. Southwest Georgia Regional Housing Authority,* 197 Ga. 571, 588 (4) (30 SE2d 196); *Richmond County Hospital Authority v. McLain,* 112 Ga. App. 209 (144 SE2d 565); 3 E.G.L., Authority Financing §§ 4, 13."

This question does not involve the tax exemption of property used for charitable purposes nor does it involve the tax liability of any person in possession of any such property under any rental or lease agreement; but the sole question is whether or

not property owned by such hospital authority is "public property" and therefore not subject to ad valorem taxation.

A review of the decisions cited by the Court of Appeals, as well as review of other decisions, shows that there is a conflict in the decisions of this court; although, in some instances an apparent conflict disappears upon closer scrutiny. In the case of *Trustees of the Academy of Richmond County v. Bohler*, 80 Ga. 159 (7 SE 633) it is held: "Therefore lands held in trust to appropriate the annual product to the erection of a poor-house and the support of its inmates forever, are not exempt [from ad valorem taxation]. The poor-house, when erected, will be exempt, but not detached property from which its support is to be derived." An examination of the report of an earlier appeal involving the "trust" discloses that the property held in "trust" was privately donated in a trust provision of a will and the "trustees" of the Richmond Academy were the trustees under the will which created the trust. The property was not a part of the corpus of the Richmond Academy property. See *City Council of Augusta v. Walton*, 77 Ga. 517 (1 SE 214).

As early as *Dart v. Houston*, 22 Ga. 506, it was recognized that a corporation created by the legislature and funded with State funds is a creature of the legislature and subject to the control of the legislature while a corporation created by the legislature to be funded by private funds is not so subject to future legislative control. Citing Trustees of Dartmouth College v. Woodward (4 Wheaton 518).

In several cases, including *Trustees of the Academy of Richmond County v. City Council of Augusta*, 90 Ga. 634 (1) (17 SE 61, 20 LRA 151), it was held: "Lands held in trust under the Act of July 31, 1783, and subsequent Acts, vesting in trustees funds arising from the sale and lease of certain lands of the State for the erection and maintenance of a public academy in the County of Richmond, are exempt from municipal taxation, though separate from the tract on which the academy is situated and used only as a means of income for the institution, the same being public property of the State." In the body of the opinion (p. 646), it was held: "It is claimed

on the part of the city that the property is not public but private, that the academy is conducted by the trustees as a private school and is not a part of the public school system of the State or county; and that as the lands taxed are separate from the tract on which the academy is situated and are used only as a means of income, they are not within the exemptions allowed by the Constitution and granted by the statute of exemptions. . . In view of the legislation to which we have referred, there can be no question as to the public character of the institution originally. The property vested in the trustees was public property and was committed to them for a public purpose. No private interest of any kind was acquired. The beneficial interest was in the public, and the trustees were merely agents of the State for the administration of the fund and the management of the institution. Since that time there has been no legislation changing the public character of the trust or parting with the control of the State over the institution or the fund connected with it. Mere non-interference with the control exercised by the trustees could not affect the rights of the State or divest the institution or the property of its public character. Nor is the institution conducted now, any more than it was at first, for any private purpose. It still subserves the public end for which it was created—the education of the people; and its purpose is none the less public because of it being conducted independently of the general public school system of the State or county. The right of the State as to property held in this manner was under consideration by this court in the case of *Dart, et al. v. Houston, et al.*, 22 Ga. 506. It was there complained by the plaintiffs in error that the court erred in deciding that the Glynn County Academy, an institution endowed in the same manner as the Richmond County Academy, was a public corporation and that the trustees had no beneficial interest in the fund, but only a naked power which the State could resume at pleasure. The court affirmed the judgment however, and held that the funds of the academy were public property and that the control of the institution was in the State. As to the same institution, it was said, in the case of *The Board of Education of Glynn*

*County v. Mayor &c. of Brunswick,* 72 Ga. 373: 'It is not and never was a private or corporate, but a public eleemosynary establishment.' . . These lands, therefore, are clearly exempt under the statute . . . which declares that 'all public property' shall be exempt from taxation. It is immaterial whether the property is used merely for income or not. The proviso at the end of the statute and of the constitutional provision on this subject . . . which excludes property 'used for purposes of private or corporate profit or income' does not apply to public property." Compare *Neal-Millard Co. v. Trustees of Chatham Academy,* 121 Ga. 208 (48 SE 978) and citations.

A different result was reached in *Sheffield v. State School Building Authority,* 208 Ga. 575, 582 (68 SE2d 590) ; *State of Ga. v. Regents of University System,* 179 Ga. 210 (175 SE 567) ; and *Stegall v. Southwest Ga. Regional Housing Authority,* 197 Ga. 571 (30 SE2d 196), but those cases primarily dealt with the bonds to be issued by such authorities being a "debt" in violation of stated provisions of the Constitution. In the *Stegall* case (p. 588), it was held: "While it has been held by some courts that housing authorities created under similar statutes are municipal corporations in the broad sense that their property might be treated as public property for the purpose of tax exemption, the regional authority here could not be correctly classified as a municipal corporation within the meaning of the foregoing debt clause of our Constitution." The author of that opinion wrote for the court in *Culbreth v. Southwest Ga. Housing Authority,* 199 Ga. 183, 188 (33 SE2d 684), with one Justice dissenting: "The Constitution provides that, 'The General Assembly may, by law, exempt from taxation all public property,' and it has been declared by statute that all such property shall be exempt. *Code* §§ 2-5002, 92-201. Property may be public property so as to come within the exemption, although the legal title is not in the State, nor in a county or municipality, provided it is .'not used for purposes of private or corporate profit and income.' *Code* § 2-5002; *Trustees of the Academy of Richmond County v. Augusta,* 90 Ga. 634 (17 SE 61, 20 LRA 151) ; *Walden v. Whigham,* 120 Ga. 646 (48 SE 159). 'Public property, within the meaning of that clause of

the Constitution which authorizes the General Assembly to exempt from taxation all public property, embraces only such property as is owned by the State, or some political division thereof, and title to which is vested directly in the State, or one of its subordinate political divisions, or in some person holding exclusively for the benefit of the State, or a subordinate public corporation. *Board of Trustees of Gate City Guard v. Atlanta,* 113 Ga. 883 (39 SE 394, 54 LRA 806).' *Williamson v. Housing Authority of Augusta,* 186 Ga. 673 (8), 691, supra.

"As we have seen above, the applicable statutes purport to make Southwest Regional Housing Authority a public corporation, and we cannot say that they are ineffectual for that purpose. Since the housing authority is thus a public corporation, and is using this property exclusively for a declared public and governmental purpose, and not for private or corporate benefit or income, it is in effect an instrumentality of the State, and therefore the property is exempt from taxation to the same extent as if the legal title thereto was in the State itself or in a county or city. *Newton v. Atlanta,* 189 Ga. 441 (3) (6 SE2d 61)."

In the case of the *State of Ga. v. Regents of the University System,* 179 Ga. 210, supra, the court was dealing with bonds to be issued and pledging anticipated revenue to pay the principal and interest thereon. It was there said (p. 222): "If the proposed bonds here under consideration would create a debt at all, it would be a debt against the corporation governed by the Board of Regents, and not against the State. This conclusion is not based upon the terms and conditions of the particular contract. Regardless of the stipulations made, the State of Georgia could never be called upon to pay these bonds. Nor would it be under any obligation, moral or otherwise, to levy any tax for the purpose of repairing any loss that might result to the university in consequence of these transactions, if the action of the board should ultimately prove to be unwise and a loss should result. If the payment of any of these bonds from the income as pledged should by any chance cause such a drain upon the resources of the affected institution that it might be in need of increased appropriations in order to function

properly as an educational unit, the State would still be under no obligation to supply the deficit, even though it might desire to do so and actually do so. Such a condition would place the State only in the same situation as if the regents should be guilty of waste or mismanagement whereby they could not function without increased appropriations. If waste and mismanagement would not create a debt against the State, the issuance of these bonds would not do so. Such a condition would be referable only to the character of the management, and would not lead to constitutional difficulties. The fact that the regents promise to make every reasonable effort to fill the new dormitories to the possible exclusion of the old, whereby the non-pledged income from dormitory fees for the use of existing buildings may be reduced, does not tend to make the bonds a debt against the State. This again is a mere matter of management, and is one falling within the discretion of the regents concerning the use of the property confided to their government." Such case did not involve the pledge of property of the university, nor under the provisions of the Revenue Bond Law of 1937 (Ga. L. 1937, p. 761; *Code Ann.* §§ 87-807, 87-812), enacted after the decision in such cases can property, other than revenue received from such property, be levied upon to repay such proceeds from bonds. As was further said in that case (p. 226): "The final question is whether the regents have legal authority to obtain the loan in accordance with the terms and conditions of the loan agreement, including the proposed pledge of the portions of the income therein specified. In the first division of this opinion we have disposed of the question whether the obligations would create a debt against the State, and in the briefs filed for defendants it is maintained that such obligations would not even create a debt against the regents as a corporation. This for the reason that the bonds do not constitute general obligations, but are payable only out of special funds. In the view which we take of the case it is unnecessary to decide whether in these circumstances a 'debt' will be created against the corporation. Whatever the nature of the particular obligation, it is our opinion that the board of regents, or the corporation as the case may be, is vested with

sufficient authority to issue the bonds and to obtain the loan upon the conditions agreed upon. The buildings are to be erected on the lands of the corporation, and the title to the buildings will be in the corporation from the time of their construction, ownership by the corporation not being dependent upon any condition, not even the payment of the loan. No mortgage or other lien is created, and the only stipulation which in any manner contemplates a lien is the statement which specifies the income to be pledged. None of the other property or resources can ever be held liable, and all possible remedies must be aimed at such special income."

While the Act of 1964, supra (*Code Ann.* § 88-1807 et seq.), purports to authorize the mortgage of the real property of the Authority, no decision which has been called to our attention specifically upholds such a contract, nor would the existence of such a contract have the effect of changing the status of the real property from public to private or vice versa.

In *Sheffield v. State School Building Authority,* 208 Ga. 575, supra, the court held that property held by the Authority was not public property but was exempt from taxation under the "charity" exemption. The same result was reached in *McLucas v. State Bridge Bldg. Authority,* 210 Ga. 1, 8 (77 SE2d 531). Thereafter, in *Sigman v. Brunswick Port Authority,* 214 Ga. 332 (2) (104 SE2d 467), it was held: "The Act of the General Assembly as amended creating the Brunswick Port Authority and exempting its property and revenue bonds from taxation is not violative of Art. VII, Sec. I, Par. IV of the Constitution (*Code Ann.* § 2-5404), and such exemption does not grant a donation or gratuity in violation of Art. VII, Sec. I, Par. II of the Constitution (*Code Ann.* § 2-5402). No private interest exists in the property of the Authority. The members thereof may not use it for private gain or income. The Authority holds title only for the benefit of the State and the public, and the Authority is an instrumentality of the State or a subordinate public authority or corporation of the State. In *Williamson v. Housing Authority of Augusta,* 186 Ga. 673, 691 (199 SE 43), it is said: 'If the project under attack is for public purposes, and the property about to be acquired by it is for public

purposes, then the property may be exempted from taxation, and its bonds, being instrumentalities of government, are non-taxable. Property may be public property so as to come within the exemption from taxation although the legal title is not in the State, the county, or a municipality. Compare *Trustees of the Academy of Richmond County v. Augusta*, 90 Ga. 634 (17 SE 61, 20 LRA 151). See also *Walden v. Whigham*, 120 Ga. 646 (48 SE 159). Public property, within the meaning of that clause of the Constitution which authorizes the General Assembly to exempt from taxation all public property, embraces only such property as is owned by the State, or some political division thereof, and title to which is vested directly in the State, or one of its subordinate political divisions, *or in some person holding exclusively for the benefit of the State, or a subordinate public corporation. Board of Trustees of Gate City Guard v. Atlanta*, 113 Ga. 883 (39 SE 394, 54 LRA 806).' (Italics ours.) See also *McGinnis v. McKinnon*, 165 Ga. 713 (141 SE 910); *Swoger v. Glynn County*, 179 Ga. 768 (177 SE 723). Property used for the purpose of public convenience and welfare in the matters of public travel and transportation and to facilitate public transportation and as a dock or port operation, to provide buildings which the users of the port may lease, and in which to store and process commodities transported by water, is in the aid of commerce, and is for the promotion of public transportation, public commerce, and general welfare, and may properly be classified as public property and therefore exempt from taxation." A dissent on other grounds was filed in that case.

In *Undercofler v. Hospital Authority of Forsyth County*, 221 Ga. 501 (145 SE2d 487), with one Justice not participating, it was held that hospital authorities are granted the same exclusion from taxes as cities and counties. While that case dealt with the Sales and Use Tax Act the same reasoning would apply as to ad valorem taxes. The exemption to cities and counties is because their property is public property. The same exemption for a hospital authority of necessity would be because its property is public property.

While the court has waivered on occasion as to the ownership of "authority" property, the oldest decisions show it to be

public property as do the latest decisions. We believe the true rule is well expressed in *Sigman v. Brunswick Port Authority*, 214 Ga. 332, supra, and accordingly the question propounded by the Court of Appeals is answered in the affirmative.

*All the Justices concur except Felton and Hawes, JJ., who dissent.*

HAWES, Justice, dissenting. I must respectfully dissent from the opinion delivered by the majority in this case. I feel that the majority have entirely missed the mark in reaching the conclusion which they have reached. In the first place, the answer to the question propounded by the Court of Appeals depends not so much on previous decisions of this court as upon proper interpretation of the 1964 Act (Ga. L. 1964, pp. 499, 598; *Code Ann.* § 88-1801, et seq.) referred to in the question. Previous decisions of this Court are relevant only insofar as they aid in a proper construction of the Act.

"In all interpretations [of legislative enactments], the courts shall look diligently for the intention of the General Assembly, keeping in view at all times, the old law, the evil, and the remedy." *Code* § 102-102 (9). That this is the cardinal rule of statutory construction is so well established as to hardly require the citation of authority. See, however, for example, *Foster v. Vickery*, 202 Ga. 55, 60 (42 SE2d 117); and, *Lamons v. Yarbrough*, 206 Ga. 50, 55 (55 SE2d 551). I would look first to the proper construction of the law involved to determine the legislative intent as to whether the property referred to in the question is exempt. The hospital Authority involved in this case is one created under the provisions of Ch. 88-18 of the Code as enacted by the Act approved March 18, 1964 (Ga. L. 1964, pp. 499-664). Chapter 88-18, commonly referred to as the "Hospital Authority Law," begins on p. 598 of Ga. L. 1964; *Code Ann.* § 88-1803, contains the exemption with which we are concerned in this case. That exemption, omitting certain irrelevant provisos added thereto by the Act of 1965 (Ga. L. 1965, p. 347), reads as follows: "Hospital Authorities shall be granted the same exemptions and exclusions from taxes as are now granted to cities and counties for the operation of *facilities* similar to *facilities* to be operated by hospital Authorities as provided for under the provisions of this title."

(Emphasis supplied). I find no definition of the word "facilities" set forth in this chapter of the Act. However, § 88-1802 (d) reads as follows: "The word 'project' includes the acquisition and construction of hospitals, sanitariums, dormitories, clinics, housing accommodations, nursing homes, rehabilitation centers, extended care facilities and other public health facilities for the use of patients and officers and employees of any institution under the supervision and control of any hospital Authority or leased by the hospital Authority for operation by others to promote the public health needs of the community and all utilities and facilities deemed by the Authority necessary or convenient for the efficient operation thereof."

In giving consideration to this language in its context, I cannot ascribe to the legislature an intent to exempt from ad valorem taxation any facility other than those enumerated in Par. (d) of § 88-1802 above quoted. Conceding that, in answering the question propounded, we may be bound to look only to the question itself in formulating our answer, and therefore we may not judicially know or take into consideration the exact nature or kind of property here involved, I do not think we should give an unqualified affirmative answer to the question. The question clearly states that the property involved is not itself a part of the hospital but is property, the income from which is devoted to hospital operations and in furtherance of the legitimate functions of the hospital Authority. If the property involved cannot be logically classified as a hospital, sanitarium, dormitory, clinic, housing accommodation, nursing home, rehabilitation center, extended care facility or other public health facility created for the use of patients, officers and employees of the institution involved, then it cannot come within the exemption granted.

It seems to me that several fundamental rules of statutory construction in addition to the ones alluded to above strongly militate against the conclusion reached by the majority of my associates. Hospital Authorities created under the 1964 Act are expressly made corporate bodies with authority to sue and be sued. They are nothing more or less than public non-profit corporations created for the specific purposes set forth in the

Act. *Smith v. Board of Educ. of Washington County,* 153 Ga. 758 (2) (113 SE 147). As such, the powers and rights granted to them under the Act are to be strictly construed and not to be extended by implication. *Ga. Railroad v. Smith,* 70 Ga. 694, 702; *Alabama Great Southern R. v. Gilbert,* 71 Ga. 591; *West End & Atlanta Street R. Co. v. Atlanta Street R. Co.,* 49 Ga. 151 (2); *Augusta & Savannah R. Co. v. Augusta Southern R. Co.,* 96 Ga. 562, 565 (23 SE 501); *City of Macon v. Walker,* 204 Ga. 810, 812 (51 SE2d 633).

Furthermore, we are here dealing with a provision of the statute exempting hospital Authorities from the payment of taxes. A fundamental principle of tax exemptions is that they shall be strictly construed against the taxpayer, and unless the language of the statute clearly grants the exemption, it is the duty of the court to rule in favor of the State. *Fulton County Fed. Savings &c. Assn. v. Simmons,* 210 Ga. 621, 624 (82 SE2d 16) and cits.

Another proposition of law which I deem to be applicable to this question is the maxim, "expressio unius est exclusio alterius." *City of Macon v. Walker,* 204 Ga. 810 (2), supra. Here the legislature has seen fit to exempt specified properties from taxation, to wit, facilities operated by hospital Authorities. As we have already pointed out, these facilities are strictly related to hospitals and their immediate appurtenant structures. Nothing else was exempted by the legislature and under the maxim just quoted no other exemption will be implied.

Finally, it must be noted that the legislature did not intend to treat the property of hospital authorities as public property so as to bring all property held by hospital Authorities within the purview of *Code Ann.* § 92-201 exempting all public property. To me this is manifest from the language of § 88-1808 relating to the character of certificates of indebtedness of the Authority. That section provides that the certificates and other obligations of a hospital authority shall not be a debt of a city, county, or of the State of Georgia nor of any political subdivision thereof nor an indebtedness of any combination of subdivisions acting jointly under the provisions of the Act. That section declares, however, that such certificates and the income

therefrom shall be exempt from all taxes because they are issued for an essential public and governmental purpose. Hospital Authorities are not political subdivisions of the State, however, and their property, while devoted to those purposes, is not per se public property.

Nevertheless, it is contended that the general exemption from taxes of all public property embodied in *Code Ann.* § 92-201 is applicable to the property of hospital Authorities. The complete answer to such contention is found in the wording of § 88-1803 above referred to. That section is in irreconcilable conflict with the provisions of § 92-201 insofar as § 92-201 provides for a tax exemption to property of hospital Authorities as "public property," because *Code Ann.* § 88-1803 spells out exactly what property of hospital Authorities is exempt. While I recognize the well established rule that repeals by implication are not favored, and that there is no express repeal in any part of § 92-201; yet, as was said by this court, speaking through then Justice (now Chief Justice) Almand in the case of *Nash v. National Preferred Life Ins. Co.,* 222 Ga. 14, 21 (148 SE2d 402): "The law applicable to repeal by implication is well settled in this State. While repeal by implication is not favored, a statute will be held to have repealed a prior statute where the latter is clearly inconsistent and contrary to the most recently enacted law or where the later enactment appears to cover the entire subject matter and give expression to the whole law on the subject. *Leonard v. State ex rel. Lanier,* 204 Ga. 465 (2) (50 SE2d 212); *Collier v. Mitchell,* 207 Ga. 528, 530 (63 SE2d 338). The repeal will be effective only insofar as there is inconsistency between the two statutes. *McGregor v. Clark,* 155 Ga. 377, 385 (116 SE 823); *Atlantic Log &c. Co. v. Central of Ga. R. Co.,* 171 Ga. 175 (155 SE 525), and cases there cited. . . . In the final analysis, however, the intention of the legislature will control the question as to repeal by implication. *Western & A. R. Co. v. City of Atlanta,* 113 Ga. 537, 556 (38 SE 996, 54 LRA 298); *Jones v. Stokes,* 145 Ga. 745, 749 (89 SE 1078)."

As I have already said, I think it is clear that the intention of the legislature was to limit the tax exemption to be afforded

to hospital Authorities to those facilities used for hospital and related purposes. Applying the foregoing rule to the enactment here in question, it is clear, there being a general repealer appended to the Act (Ga. L. 1964, p. 664), that the legislature intended to repeal § 92-201 insofar as it would afford a general exemption from taxes to the property of hospital Authorities as "public property."

For the foregoing reasons, I most respectfully dissent from the answer made by the majority of this court to the question propounded by the Court of Appeals. I would, at the very least, modify the answer so as to qualify the unequivocal affirmative reply by limiting its application to those facilities operated by the hospital Authority as a hospital, sanitarium, dormitory, clinic, housing accommodation, nursing home, rehabilitation center, extended care facility or other public health facility, maintained for the use of patients, officers and employees of the hospital authority. To the extent that the answer may be construed and applied so as to afford an exemption from ad valorem taxes of any real property owned by the hospital not within these limited categories I think it is wrong.

FELTON, Justice, dissenting. In my opinion it was not the intention of the General Assembly to exempt from ad valorem taxation property of a hospital Authority which is used as an endowment facility only and not as a part of a hospital, etc. This applies to *Code Ann.* § 92-201 and *Code Ann.* § 88-1803. The latter intended only to exempt hospital Authorities from the State Sales and Use Tax from funds spent for operation of facilities only, as was done by the 1941 Act in different language. *Code Ann.* § 92-201 prohibits exemption of ad valorem taxes on real estate used solely for endowment purposes. An Authority cannot do indirectly what it cannot do directly. It could not accept a gift of money and invest it in a building for endowment income only and it cannot accept land as a gift and build a building on it to be used solely for endowment purposes.