**THIRD DIVISION**
**MILLER, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**July 7, 2016**

# In the Court of Appeals of Georgia

A16A0638, A16A0639. COLUMBUS, GEORGIA BOARD OF TAX ASSESSORS et. al. v. THE MEDICAL CENTER HOSPITAL AUTHORITY; and vice versa.

MCFADDEN, Judge.

Hospital authority property is public property and therefore exempt from ad valorem taxation, as long as the use of the property or its income furthers legitimate functions of the hospital authority. See *Columbus, Georgia, Bd. of Tax Assessors v. Med. Ctr. Hosp. Auth.*, __ Ga. App. __, __ (783 SE2d 182) (Case No. A15A2407, decided Mar. 22, 2016). The question presented in this appeal is whether the Medical Center Hospital Authority's leasehold interest in a continuing care retirement facility is public property exempt from ad valorem taxation. An earlier, unappealed superior court bond validation order found that it is a public project within the scope of the Hospital Authorities Law. We are bound by that finding, and it is dispositive. We

therefore affirm. We do not reach the Medical Center Hospital Authority's argument that the continuing care retirement facility is entitled to an exemption on alternate grounds.

1. *Factual background and procedural posture.*

The relevant facts are largely undisputed. The Medical Center Hospital Authority ("Hospital Authority") is a hospital authority created under the Hospital Authorities Law, OCGA § 31-7-70 et seq. Spring Harbor at Green Island is a continuing care retirement facility built on 40 acres of land owned by Columbus Regional Healthcare System, Inc. ("Columbus Regional"), which is not a party to this appeal. In 2004, the Hospital Authority issued $74.66 million in revenue bonds to finance construction of the Spring Harbor facility on Columbus Regional's land. It refinanced the bonds in 2007. Until the issuance of the bonds, Columbus Regional had funded the development work on Spring Harbor.

On June 1, 2004, Columbus Regional as the lessor and the Hospital Authority as the lessee entered a lease agreement with a term of 40 years. According to the lease, the Hospital Authority wanted "to construct, own, and operate" Spring Harbor at Green Island and to lease the real estate owned by Columbus Regional for this purpose. For $10, the Hospital Authority leased Columbus Regional's land and the

improvements then existing or to be constructed on the land, which the parties referred to collectively as the "leased property." Columbus Regional warranted that it owned in fee the leased property.

The lease included an early termination provision that allowed Columbus Regional to terminate the lease and repossess the leased property once the bonds were retired. It provided that all improvements were completely within the control of the Hospital Authority during the lease term, but once the lease term ended the improvements would become the absolute property of Columbus Regional. The lease prohibited Columbus Regional from encumbering the leased property with a mortgage, absent the Hospital Authority's consent. It granted the Hospital Authority the right to sell, assign, or transfer its leasehold estate and to sublet all or any portion of the leased property.

When the revenue bonds were refinanced in 2007, the parties entered a superseding lease for a term of 60 years. The 2007 lease was largely unchanged from the 2004 lease. Other than extending the lease term from 40 years to 60 years, the 2007 lease provided that Columbus Regional would pay the real estate taxes on the land, whereas the 2004 lease had provided that the Hospital Authority would pay those taxes.

3

The same day that it entered the 2004 lease, the Hospital Authority entered a management agreement with Columbus Regional Senior Living, Inc. under which nonparty Columbus Regional Senior Living agreed to develop, market, and manage the operation of Spring Harbor on behalf of the Hospital Authority. (The Hospital Authority and Columbus Regional Senior Living entered an amended management agreement on April 1, 2007, when Columbus Regional Healthcare System and the Hospital Authority entered the amended lease.) The management agreement contemplated that Columbus Regional Senior Living would enter a sub-management agreement for another entity to operate Spring Harbor. Columbus Regional Senior Living then entered this contemplated sub-management agreement with nonparty CRSA Management, LLC under which it paid CRSA Management an annual fee to assume Columbus Regional Senior Living's management responsibilities under its management agreement with the Hospital Authority.

In May 2007, the Hospital Authority filed this action against the Columbus, Georgia Board of Tax Assessors; the city of Columbus, Georgia; and Lula Lunsford Huff, the tax commissioner for Muscogee County (together, "the tax board"). It sought, among other things, a declaration that its interest in Spring Harbor under the lease is not subject to ad valorem property taxation. It contended that its interest is

4

public property, the use and income of which furthers its legitimate functions as a hospital authority, and therefore is exempt from ad valorem taxation under OCGA § 48-5-41 (a) (1). It contended alternatively that its interest in Spring Harbor was exempt from ad valorem taxation as a nonprofit home for the aged under OCGA § 48-5-41 (a) (12) (A).

The superior court granted summary judgment to the Hospital Authority on the ground that its "property interest in the facilities and improvements constituting Spring Harbor qualifies as public property, and therefore, it is exempt from ad valorem property taxation." The court rejected the alternative ground, concluding that the home for the aged exemption applies only to nonprofit corporations, not hospital authorities created under the Hospital Authorities Law. The tax board appeals the ruling that the Hospital Authority's interest in the property is exempt as public property, and the Hospital Authority appeals the ruling that the property is not exempt as a nonprofit home for the aged.

2. *Public property exemption*.

Hospital authority property is public property and therefore exempt from ad valorem taxation, as long as the use of the property or its income furthers legitimate functions of the hospital authority. See *Columbus, Georgia, Bd. of Tax Assessors*, __

5

Ga. App. at ___. The tax board argues that the Hospital Authority does not own Spring Harbor or exercise sufficient control over it for its leasehold estate to be public property, and therefore its interest in Spring Harbor is not exempt from ad valorem taxation. We disagree.

a. *Hospital Authority's interest*.

Regardless of the nature of the Hospital Authority's interest in the property, that interest is a distinct estate subject to taxation. "In this [s]tate there can be several separate and distinct estates in the same parcel of land, and . . . the owner of any estate in land less than the fee [must] return it for taxes and pay taxes on it as on other property. A leasehold is an estate in land less than the fee; it is severed from the fee and classified for tax purposes as realty." *Delta Air Lines v. Coleman*, 219 Ga. 12, 16 (1) (131 SE2d 768) (1963) (citations omitted). In other words, each estate in land is classified separately in order to determine tax liability. See OCGA § 48-5-3 ("All real property including, but not limited to, leaseholds, interests less than fee, and all personal property shall be liable to taxation and shall be taxed, except as otherwise provided by law.").

Here, the tax board does not dispute that the Hospital Authority has *some* interest in Spring Harbor. In fact, it assessed Columbus Regional's interest in the

6

property separately, implying that the Hospital Authority and Columbus Regional each have a separate interest in Spring Harbor. That assessment is not in dispute. Indeed at the hearing on the parties' motions for summary judgment, counsel for the tax board stated that the "Hospital Authority is just not the legal owner of the improvements," but conceded that it has "a leasehold interest but the legal owner is Columbus Regional." And, as noted above, leasehold interests are estates in land that are assessed separately from the other interests in land.

We find this case to be analogous to *Douglas County v. Anneewakee, Inc*., 179 Ga. App. 270 (346 SE2d 368) (1986). There, a for-profit company leased property to a nonprofit, tax-exempt hospital. We concluded that "the leasehold held by [the nonprofit hospital], when severed from the private -- and taxable -- fee owned by [the for-profit corporation], took on the tax[-]exempt status of the holder of the leasehold; i.e., [the nonprofit hospital]." Id. at 275 (3). It is true that the ad valorem tax exemption at issue in *Douglas County* was not the public property exemption at issue here. But the underlying principle applies equally here: a property interest held by a tax-exempt entity, when severed from a taxable fee owned by another entity, takes on the tax-exempt status of the holder of that interest.

b. *Legitimate functions of the Hospital Authority*.

7

In our recent opinion involving the same parties but different properties, we held that hospital authority property is exempt from property taxes "as long as the use of the property or its income furthers the legitimate functions of the hospital authority." *Columbus, Georgia, Board of Tax Assessors*, supra, __ Ga. App. at __ (1). In this case, that issue has been decided in the superior court bond validation orders.

"When presented with a petition for the validation of revenue bonds, a trial court must consider whether the proposal to issue those bonds is 'sound, feasible, and reasonable.'" *Greene County Dev. Auth. v. State*, 296 Ga. 725, 726 (770 SE2d 595) (2015) (citation omitted). The trial court in this case so found. And in both the 2004 bond validation order and the 2007 order validating the refinancing of the bonds, it made the constituent finding "that the purposes for which the [b]onds [were] being issued, as described in the petition and complaint, [were] in furtherance of the public purposes for which [the Hospital] Authority was established. . . ." More specifically, in the 2007 "order concerning bond validation proceedings," the court wrote:

> Spring Harbor is a wonderful community asset and one which does address a public need of an identifiable class of citizens, the elderly. . . . Based on the income required to be a resident of Spring Harbor, the project does not address the needs of the poor and the indigent but with the broad powers of the Authority outlined in Georgia law, the [c]ourt cannot say such is a legal impediment to prevent the project. Spring

8

Harbor is [a] public project addressing a real community need, a continuous transition residential community addressing the health needs of elderly citizens at different stages during their senior years. Therefore, *the court does find as a matter of law and as a matter of fact this "residential retirement community" is a project contemplated under the Hospital Authorities Law*, especially since the "medical components" for "assisted living", "dementia" and "nursing and doctor care" are all available on site as the resident transitions from independent living.

(Emphasis supplied).

That finding is conclusive. Our state constitution directs, "The General Assembly shall provide for the validation of any revenue bonds authorized and shall provide that such validation shall thereafter be incontestable and conclusive." Ga. Const. of 1983, Art. IX, Sec. VI, Par. IV. And the General Assembly has so provided.

If no appeal is filed within the time prescribed by law or if an appeal is filed and the judgment is affirmed on appeal, the judgment of the superior court confirming and validating the issuance of the bonds and the security therefor shall be forever conclusive against the governmental body upon the validity of such bonds and the security therefor.

OCGA § 36-82-78. Our Supreme Court has explained the reason for the rule.

This preclusion is necessary to protect the ability of governmental bodies to obtain long-term financing in the bond market. Potential purchasers would be reluctant to invest in the state's bonds without the assurance that the revenue bonds and their security are not subject to collateral attacks after a court with proper jurisdiction has entered a final validation order. Any perceived risk in the revenue bonds as an investment would impede the ability of state and local governments to finance needed public improvement projects.

*Ambac Indem. Corp. v. Akridge*, 262 Ga. 773, 775 (1) (425 SE2d 637) (1993). For that reason a judgment in a bond validation proceeding is conclusive as to all "questions which could and should have been asserted and adjudicated during the bond validation proceedings." *Woodham v. City of Atlanta*, 283 Ga. 95, 98 (3) (657 SE2d 528) (2008) (citations omitted), superseded by statute on different grounds, *Sherman v. Atlanta Independent School System,* 293 Ga. 268 (744 SE2d 26) (2013). The scope of that conclusiveness is broad.

Our Supreme Court has held consistently that [the Revenue Bond Law, OCGA § 36-82-60 et seq.] prevents *any* collateral attack by the county, county residents, or taxpayers who had proper notice of the validation proceedings but chose not to intervene or appeal. . . . Even if the judgment of validation is unconstitutional or arguably void, it cannot be collaterally attacked.

*Turpen v. Rabun County Bd. of Commrs.*, 251 Ga. App. 505, 508-509 (554 SE2d 727) (2001) (citations and punctuation omitted; emphasis in original). Consequently, the bond validation proceedings conclusively established that Spring Harbor furthers a legitimate function of the Hospital Authority. And the trial court's ruling is final: Spring Harbor is a project contemplated under the Hospital Authorities Law and the Hospital Authority's interest in it is exempt from ad valorem taxation.[1]

---

[1] We therefore do not reach the question whether Georgia law authorizes an institution dedicated to serving wealthy individuals to be deemed a public project. Perhaps so. See *Hosp. Auth. of Albany v. Stewart*, 226 Ga. 530, 531 (175 SE2d 857) (1970) (property, including pecan groves, held "exempt from ad valorem taxation, where the property itself is not a part of the hospital but its income is properly devoted to public purposes (hospital operations) in the furtherance of the legitimate functions of the hospital authority") (nature of property specified in *Teachers' Retirement System of Ga. v. City of Atlanta*, 249 Ga. 196, 201 n.4 (2) (288 SE2d 200) (1982)). Perhaps not. See *Tift County Hosp. Auth. v. MRS of Tifton, Ga.*, 255 Ga. 164 (335 SE2d 546) (1985) (judgment enjoining hospital authority "from selling and renting durable medical equipment to the general public" affirmed).

But if so, the practice of hospital authorities entering lease agreements with private entities is now at some remove from the wellspring of its constitutional legitimacy. In 1970 our Supreme Court rejected a constitutional challenge to the Hospital Authorities Law: a claim that it purported to authorize "the use of 'public funds' to engage in a business of a private nature in violation of the equal protection and due process provisions of the Georgia Constitution. . . ." *Bradfield v. Hosp. Auth. of Muscogee County*, 226 Ga. 575, 580 (176 SE2d 92) (1970). In rejecting that claim, our Supreme Court reaffirmed that "hospitals, whether owned directly by a county or city, or by an authority, are designed and intended to serve identical purposes of discharging the governmental obligation to provide for the health of the people." Id. at 583 (1). That court went on to hold, "[t]here is no apparent reason why a suitable private corporation could not properly operate the hospital, either as lessee or as

11

3. *Nonprofit home for the aged exemption.*

The Hospital Authority argues that the trial court erred in rejecting its argument that Spring Harbor is exempt from ad valorem taxation as a nonprofit home for the aged. Given our holding that the interest is exempt as public property, we do not reach this argument.

*Judgment affirmed. Miller, P. J.,concurs. McMillian, J., concurs in the judgment only.*

---

owner, so as to likewise promote the public health functions of government." Id.; accord *Richmond County Hosp. Auth. v. Richmond County*, 255 Ga. 183, 184 (1) (336 SE2d 562) (1985). The *Richmond County* court emphasized that under the terms of the lease before it, the private corporation had agreed "to operate the hospital for the public benefit on a nonprofit basis; to maintain the hospital; to provide emergency treatment; to set rates using the same nonprofit criteria applicable to hospital authorities (thus not an improper delegation of the Authority's right to fix rates and charges); to provide ambulance services; and to assume a significant indigent-care burden. . . ." *Richmond County Hosp. Auth.,* 255 Ga. at 185 (1).