302 Ga. 358
FINAL COPY

S17G0091.  COLUMBUS BOARD OF TAX ASSESSORS et al. v. THE MEDICAL CENTER HOSPITAL AUTHORITY.

HUNSTEIN, Justice.

In May 2007, The Medical Center Hospital Authority ("Hospital Authority") filed an action against the Columbus Board of Tax Assessors and related parties (together, "the Tax Board") in which it sought a declaration that its leasehold interest in a building located on real property owned by a private entity constituted public property exempt from ad valorem taxation under OCGA § 48-5-41 (a) (1).  The superior court granted summary judgment to the Hospital Authority, finding that the Hospital Authority's leasehold interest qualified as "public property," and was thus exempt from ad valorem property taxation.  The Tax Board appealed this decision to the Court of Appeals, which affirmed the trial court's grant of summary judgment.[1]  See Columbus, Ga. Bd.

[1] The Hospital Authority further alleged that it was tax exempt because it met the requirements as a home for the aged pursuant to OCGA § 48-5-40 (2).  The Court of Appeals did not reach this issue on appeal as it affirmed summary judgment on the "public property" exemption.  See Columbus, Ga. Bd. of Tax Assessors v. Med.

of Tax Assessors v. Med. Center  Hosp. Auth., 338 Ga. App. 302 (788 SE2d 879) (2016).

We granted certiorari to decide whether the Court of Appeals erred in determining that two prior bond validation orders conclusively determined, for purposes of OCGA § 48-5-41 (a) (1) (A), that the property at issue is "public property" exempt from ad valorem taxation.  For the reasons that follow, we hold that these orders did not conclusively establish that the Hospital Authority's leasehold interest was "public property" exempt from ad valorem taxes and therefore reverse the Court of Appeals and remand this case for further proceedings.

1.    *Factual and Procedural Background*

This is a decade old case that has a rich and detailed factual background and procedural history.  We address the pertinent parts of that history below, including the lease agreement, the bond validations, the superior court's grant of summary judgment regarding ad valorem taxes, and the opinion of the Court of Appeals affirming that judgment.

Center Hosp. Auth., 338 Ga. App. 302 (788 SE2d 879) (2016).  We did not grant certiorari on this question, and, therefore, we do not review it.

2

(a)    *Creation of Lease Agreement*

On June 1, 2004, Columbus Regional Healthcare System, Inc. ("Columbus Regional"),[2] as the lessor, and the Hospital Authority, as the lessee, entered into a long-term lease agreement. Specifically, the lease stated that the Hospital Authority wanted "to construct, own, and operate" on land owned by Columbus Regional a facility known as Spring Harbor at Green Island, a continuing care retirement center. At the conclusion of the lease term, all improvements would become the absolute property of Columbus Regional, including the Spring Harbor facility. To further the goals of the lease, the Hospital Authority subsequently issued revenue bonds to finance construction of Spring Harbor. At the same time, the Hospital Authority entered into a management agreement with another private entity, a subsidiary of Columbus Regional, to develop, market, and manage the operation of Spring Harbor on behalf of the Hospital Authority. See Columbus, 338 Ga. App. at 302-304.

(b)    *Bond Validation Orders*

---

[2] Columbus Regional is a private non-profit organization.

Later in 2004, the superior court validated the financing of the Hospital Authority's bonds, finding, in pertinent part, "that the purposes for which the Bonds are being issued, as described in the petition and complaint, are in furtherance of the public purposes for which Defendant Authority was established." Following a 2007 bond refinancing, the superior court again was tasked with considering the validity of the revenue bonds, and was specifically *"requested to rule on which entity did in fact build, manage and own[ ] Spring Harbor at Green Island."* In its detailed, 27-page order, the superior court both validated the refinancing of the bonds, and also concluded, in relevant part, that clear and convincing evidence "demonstrate[d] that the [Hospital] Authority ha[d] transferred and delegated [its] rights and duties to a private company." Specifically, the court noted that, though the bond documents stated that Columbus Regional would "have little participation in the Project," the court found it "apparent [that] Columbus Regional ha[d] acquired the site, built Spring Harbor, prepared all legal documents and financial transfers, and [would] own, manage and control Spring Harbor." Indeed, the court found that the Hospital Authority "ha[d] transferred all the bond proceeds, acquisition, construction,

4

management, and total control of this Project to a private company, Columbus Regional Healthcare System Inc., and/or 'affiliates.'"

Subsequently, the superior court explained that it

cannot rule as a matter of fact and as a matter of law [that] Spring Harbor is a project which originated with the [Hospital] Authority, or as one which will only benefit the [Hospital] Authority and the public, or that "no person, partnership, association, or corporation shall have any rights hereunder, or that the [Hospital] Authority will 'own' and 'manage' the Spring Harbor at Green Island project."

The court reiterated that "the entire project is owned, managed, and controlled by [a private entity], and once the bonds are paid, the [Hospital] Authority has agreed that [Columbus Regional] will take possession and will own everything on site . . . all property of every kind, real or personal." Nevertheless, as referenced above, the court validated the 2007 bond refinancing, finding that the project itself served a public purpose as contemplated under the Hospital Authorities Law.[3]

    (c)    *Proceedings Regarding Ad Valorem Taxation*

---

[3] The trial courts' bond validation rulings were not appealed, and we express no opinion on their merits.

5

Between the validation of the 2004 and 2007 bonds, the Tax Board sent the Hospital Authority a bill for its Spring Harbor property tax obligation, which included taxes for all improvements made to the facility. The Hospital Authority refused to pay, contending that its property interest in Spring Harbor was exempt from ad valorem property taxation and subsequently filed for declaratory and injunctive relief in Muscogee County Superior Court.

At the request of the trial court, the parties filed cross-motions for summary judgment regarding the taxability of Spring Harbor. Specifically, the Hospital Authority contended, inter alia, that its leasehold interest was exempt from ad valorem taxation pursuant to OCGA § 48-5-41 (a) (1) (A). The trial court granted summary judgment to the Hospital Authority finding, in relevant part, that

> the validity of Plaintiff Hospital Authority's property interest in Spring Harbor under the ground lease, and the validity of the ground lease itself, has been established by the Superior Court of Muscogee County in two separate Bond Validation orders, one in 2004 and another in 2007. *While these Bond Validation orders did not specifically resolve the issue of taxation regarding the Spring Harbor property, the orders did confirm the Hospital Authority's ownership of Spring Harbor.* [4]

[4] The superior court's conclusion regarding the Hospital Authority's ownership of Spring Harbor is inconsistent with the lengthy factual findings made by the trial

These two Bond Validation orders also determined that Spring Harbor was a valid and proper project of the Hospital Authority that advances the Hospital Authority's purposes . . . . In the instant case, income derived from the operation of Spring Harbor would not only go toward supporting its continued operation, but would necessarily be used to satisfy the Hospital Authority's revenue bond indebtedness. On both counts, said income would be used in furtherance of the functions and purposes of the Hospital Authority.

Based on the foregoing, this Court concludes that Plaintiff Hospital Authority's property interest in the facilities and improvements constituting Spring Harbor qualifies as public property, and therefore, it is exempt from ad valorem property taxation.

(Emphasis supplied.) The Tax Board appealed this decision to the Court of Appeals.

(d) *Court of Appeals Opinion*

Relying on the 2004 and 2007 bond validation orders, which the Court of Appeals determined were conclusive on the question of ownership and taxation, the Court of Appeals affirmed the trial court's grant of summary judgment. Specifically, relying upon the bond validation's "conclusive findings," the court concluded that the Hospital Authority's leasehold interest was public property

---

court in the 2007 bond validation order. However, the superior court order does not address these inconsistencies.

because, in part, "'the purposes for which the (b)onds (were) being issued, as described in the petition and complaint, (were) in furtherance of the public purposes for which (the Hospital) Authority was established.'" Columbus, 338 Ga. App. at 305. We granted the petition for certiorari to review that holding and now reverse the decision of the Court of Appeals.

2. *Analysis*

Bond validation decisions are "incontestable and conclusive." Ga Const. of 1983 Art. IX, Sec. VI, Par. IV. See also OCGA § 36-82-78 ("[T]he judgment of the superior court confirming and validating the issuance of the bonds and the security therefor shall be forever conclusive against the governmental body upon the validity of such bonds and the security therefor."). However, this restriction "only attaches to those matters that are referenced and adjudicated in [the bond] proceedings." Sherman v. Fulton County Bd. of Assessors, 288 Ga. 88, 94 (701 SE2d 472) (2010).

As the Tax Board argues, and the superior court correctly recognized below, the bond validation orders "[do] not specifically resolve the issue of taxation regarding Spring Harbor." Indeed, the bond validation orders include

8

factual determinations regarding the ownership, control, and management of the property, and the Court of Appeals appears to have misconstrued the bond validation orders in this respect.

It is well established that "[a]ll public property is exempt from taxation . . . but it is exempt only so long as it remains in public ownership." Delta Air Lines, Inc. v. Coleman, 219 Ga. 12, 16 (131 SE2d 768) (1963) (recognizing that where an entity owns a leasehold interest, that estate can be severed from the fee interest and classified separately for ad valorem tax purposes). Though OCGA § 48-5-41 (a) (1) (A) does not define "public property," this Court has established its meaning as property which "is owned by the State, or some political division thereof, and title to which is vested directly in the State, or one of its subordinate political divisions, or in some person holding exclusively for the benefit of the State, or a subordinate public corporation." Sigman v. Brunswick Port Auth., 214 Ga. 332, 335 (104 SE2d 467) (1958). When property is held not by the State itself, but instead by an instrumentality such as a hospital authority, whether it is "public property" depends on whether the instrumentality "holds title only for the benefit of the State and the public."

Hosp. Auth. of Albany v. Stewart, 226 Ga. 530, 537 (175 SE2d 857) (1970). Put another way, the question in this case is whether the Hospital Authority holds the leasehold interest for "public purposes . . . in the furtherance of the legitimate functions of the hospital authority," id. at 531, rather than for "private gain or income." Id. at 537. As the Court of Appeals previously observed, "the mere fact that property is owned by a Hospital Authority does not exempt it from property taxes." Columbus, Ga. Bd. of Tax Assessors v. Med. Center Hosp. Auth., 336 Ga. App. 746, 752 (783 SE2d 182) (2016). [5]

Just like the superior court below, the Court of Appeals presumed that the Hospital Authority's leasehold interest was *public property* because the bonds issued were found to have a *public purpose* in both the 2004 and 2007 bond validations. It may be that in many cases — perhaps even most cases — facts establishing that bonds have a public purpose also will tend to show that property associated with those bonds is public property, but it is not inevitably so. The question of whether a hospital authority's property interest qualifies for ad valorem tax exemption as "public property" is a separate and distinct

[5] This Court of Appeals decision arose from a separate action that involved the same parties but different property.

question from the issues presented in a bond validation proceeding. Instead, the standard to be applied in order to determine whether a hospital authority's property interest qualifies as "public property" is set forth in our decisions in Stewart and Sigman.

Consequently, the bond validation proceedings did not conclusively establish whether the leasehold interest of the Hospital Authority is "public property" for tax purposes, and the superior court below should have drawn its own conclusions about taxability.[6] To the extent that the Court of Appeals and superior court considered the bond validation judgments conclusive on the question of taxability, we reverse and remand for further proceedings consistent with this opinion.

Judgment reversed and case remanded with direction. All the Justices concur.

---

[6] We do not foreclose the possibility that the superior court might *consider* facts found in the bond validation proceedings. Indeed, because this issue was presented to the superior court in the form of a motion for summary judgment, the court should review all submitted record materials in support of and opposing the motion in order to determine whether a genuine issue of material fact existed as to the ad valorem tax exemption.

Decided October 16, 2017.

Certiorari to the Court of Appeals of Georgia — 338 Ga. App. 302.

Troutman Sanders, Charles F. Palmer, Kevin G. Meeks; Robert R. Lomax, for appellants.

Dentons US, J. Randolph Evans, Keshia W. Lipscomb; Rothschild & Rothschild, Jerome M. Rothschild, Andrew A. Rothschild; Scott C. Crowley; Brown & Adams, Jeffrey A. Brown, for appellee.