**FOURTH DIVISION**
**DILLARD, C. J.,**
**ELLINGTON, P. J.  and RICKMAN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 14, 2018**

# In the Court of Appeals of Georgia

A17A1639.  GEORGIACARRY.ORG,  INC.,  et  al.  v.  ATLANTA
      BOTANICAL GARDEN, INC.

RICKMAN, Judge.

The question presented in this case is whether Atlanta Botanical Garden, Inc., a private organization, is lawfully permitted under OCGA § 16-11-127 (c), to prohibit individuals from carrying guns onto its property, which it leases from the City of Atlanta. We answer this question in the affirmative. The plain and unambiguous language of OCGA § 16-11-127 (c) grants persons in legal control of private property through a lease the right to exclude individuals carrying weapons, and well-established authority from the Supreme Court of Georgia designates the land leased by the Garden as private property. We, therefore, affirm the trial court's grant of

summary judgment to the Garden on the petition for declaratory and injunctive relief filed by Phillip Evans and GeorgiaCarry.Org, Inc.

The pertinent facts are not in dispute. The Garden is a private, non-profit corporation that operates a botanical garden complex on property secured through a 50-year lease with the City of Atlanta. Evans holds a Georgia weapons carry license and is a member of GeorgiaCarry, a gun-rights organization. In October 2014, Evans twice visited the Garden, openly carrying a handgun in a holster on his waistband. Although no Garden employee objected to Evans's weapon on his first visit, he was stopped by a Garden employee during his second visit and informed that weapons were prohibited on the Garden premises, except by police officers. A security officer eventually detained Evans, and he was escorted from the Garden by an officer with the Atlanta Police Department.

Evans and GeorgiaCarry subsequently filed a petition in the Fulton County Superior Court, seeking declaratory and injunctive relief on the basis that OCGA § 16-11-127 (c) authorized Evans–and similarly situated individuals–to carry a weapon at the Garden. The trial court dismissed the petition after concluding that the issues were not appropriate for the relief sought, a ruling that the Supreme Court reversed in part on appeal. See *GeorgiaCarry.org v. Atlanta Botanical Garden, Inc.*, 299 Ga.

2

26 (785 SE2d 874) (2016). On remand, the trial court held that the Garden's property was considered private under well-established Georgia precedent, allowing the Garden to exclude weapons and, consequently, granted summary judgment to the Garden. This appeal follows.

OCGA § 16-11-127 (c) provides, in pertinent part, that:

A license holder . . . shall be authorized to carry a weapon . . . in every location in this state not [otherwise excluded by] this Code section; provided, however, that private property owners or *persons in legal control of private property through a lease*, rental agreement, licensing agreement, contract, or any other agreement to control access to such private property *shall have the right to exclude or eject a person who is in possession of a weapon or long gun on their private property* . . . (Emphasis supplied.)

It is axiomatic that when examining this text, "we must presume that the General Assembly meant what it said and said what it meant." (Citation and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013); see also *Williams v. State*, 299 Ga. 632, 633 (791 SE2d 55) (2016). "To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English

3

language would." (Citations and punctuation omitted.) *Deal*, 294 Ga. at 172-173 (1) (a); see also OCGA § 1-3-1 (a), (b); *Williams*, 299 Ga. at 633.

Here, the unambiguous text of OCGA § 16-11-127 (c) leaves no doubt that the legislature afforded only private property owners, or those in control of private property through a lease or otherwise, the power to exclude licensed weapons holders from that private property. See id. It follows that "we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." *Deal*, 294 Ga. at 173 (1) (a).

The pertinent question in this case thus becomes whether the land leased by the Garden constitutes public property or private property within the context of OCGA § 16-11-127 (c). The statute does not specifically define those terms, but Evans and GeorgiaCarry contend that although the Garden, as lessee, is a private organization and operates as a private entity, the property it leases is considered public for the purposes of OCGA § 16-11-127 (c) because the lessor of the property is the City of Atlanta.

The appellate courts of this state have not yet examined the classification of property under OCGA § 16-11-127 (c). Nevertheless, our Supreme Court has previously held–specifically in the context of a leasehold interest–that "[p]rivate

4

property becomes public property when it passes into public ownership; and public property becomes private property when it passes into private ownership." *Delta Air Lines, Inc. v. Coleman*, 219 Ga. 12, 16 (1) (131 SE2d 768) (1963). *Delta Air Lines* involved a tract of land that Delta leased from the City of Atlanta. Id. at 12-13. Delta argued that it was exempt from paying ad valorem tax on the land because the land was public property. Id. at 13. The Court disagreed, holding that, "[w]hen any estate in public property is disposed of, it loses its identity of being public property and is subject to taxes while in private ownership just as any other privately owned property." Id. at 16 (1). Thus, when a public authority conveys a leasehold interest to a private lessee, the leasehold estate "is severed from the fee" and classified as private property. See id.

Likewise, in *Douglas County v. Anneewakee, Inc.*, 179 Ga. App. 270 (346 SE2d 368) (1986), a tax-exempt organization leased property from a taxable, for-profit corporation, and the issue was whether the county could tax the leasehold interest. Id. at 271. Relying on the holding in *Delta Air Lines*, this Court affirmed the trial court's holding that "the leasehold held by the [tax-exempt organization], when severed from the private–and taxable–fee owned by [the for-profit corporation], took on the tax exempt status of the holder of the leasehold . . ." Id. at 274 (3).

And most recently, in *Columbus Bd. of Tax Assessors v. Med. Ctr. Hosp. Auth.*, 312 Ga. 358, 806 SE2d 525 (2017), the Supreme Court again reiterated that, under Georgia law, we look to the lessee, not the lessor, to determine the status of leased property. Id. at 362-363 (2). In that case, the hospital authority sought a declaration that its leasehold interest in a building located on real property owned by a private entity constituted public property and was thus tax exempt. Id. at 358. The Supreme Court held that the hospital authority could claim a tax exemption if it could demonstrate that its property interest was held for a public purpose in furtherance of its interest as a hospital authority. Id. at 362 (2).

Pursuant to the authority of *Delta Air Lines, Inc., Anneewakee, Inc.*, and *Columbus Bd. of Tax Assessors*, the leasehold interest held by the Garden, when severed from the fee owned by the City of Atlanta, is classified as private property.[1]

Evans and GeorgiaCarry nevertheless contend that the holding in those cases

---

[1] In their reply brief on appeal, Evans and GeorgiaCarry contend for the first time that the Garden failed to prove by the record that its leasehold interest pursuant to the 50-year lease is an estate for years as opposed to a usufruct, a distinction they contend may impact the applicability of *Delta Air Lines, Inc.* and its progeny. We need not consider this argument, however, as it was never asserted in the trial court. See *Pfeiffer v. Georgia Dept. of Transp.*, 275 Ga. 827, 828-829 (2) (573 SE2d 389) (2002) ("[A party] must stand or fall upon the position taken in the trial court. Fairness to the trial court and to the parties demands that legal issues be asserted in the trial court.") (citation and punctuation omitted).

should be confined to govern only tax-related issues, but we can find no principled reason for that distinction. "[A]ll statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it. They are therefore to be construed in connection and in harmony with the existing law." (Citation and punctuation omitted.) *Grange Mut. Cas. Co. v. Woodard*, 300 Ga. 848, 852 (2) (A) (797 SE2d 814) (2017); see *Williams v. State*, 299 Ga. 632, 634 (791 SE2d 55) (2016). Moreover, statutory law "[is] not understood to effect a change in the common law beyond that which is clearly indicated by express terms or by necessary implication." (Citation and punctuation omitted.) *Avnet, Inc. v. Wyle Laboratories*, 263 Ga. 615, 619-620 (2) (437 SE2d 302) (1993); see *Woodard*, 300 Ga. at 855-856 (2) (B).

Nothing in OCGA § 16-11-127 (c) expressly contravenes the common-law authority cited above, nor does it do so by necessary implication. Indeed, the only way to rectify the plain and unambiguous language of OCGA § 16-11-127 (c) with well-established Georgia precedent is to conclude that the Garden, a private entity with a leasehold interest in what is deemed to be private property, may exclude licensed weapons holders from entering that property. See id.; *Columbus Bd. of Tax*

*Assessors,* __ Ga. at __ (2); *Delta Air Lines*, 219 Ga. at 16 (1); *Anneewakee, Inc.*, 179 Ga. App. at 273-274 (3). Accordingly, we affirm the ruling of the trial court.

*Judgment affirmed. Dillard, C. J., and Ellington, P. J., concurring fully and specially.*

# In the Court of Appeals of Georgia

A17A1639. GEORGIACARRY.ORG, INC., et al. v. BOTANICAL GARDEN, INC.

DILLARD, Chief Judge, concurring fully and specially.

The right of Americans to "keep and bear arms"[1] has "justly been considered, as the palladium of the liberties of a republic."[2] And the private property rights we

---

[1] *See* U.S. CONST. amend. II ("A well regulated militia being necessary to the security of a free state, the right of the people to keep and bear arms shall not be infringed."); *see also District of Columbia v. Heller*, 554 U.S. 570, 635 (IV) (128 S Ct 2783, 171 LE2d 637) (2008) (Scalia, J.) ("The Second Amendment . . . is the very product of an interest balancing by the people . . . . [i]t surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home.") (emphasis omitted).

[2] 3 JOSEPH STORY, COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES, § 1890, at 746 (Fred B. Rothman & Co. 1991) (1833).

enjoy as free citizens are "among the most basic of human rights."[3] For these reasons, the General Assembly sought to balance these sacrosanct rights in OCGA § 16-11-127 (c) by permitting those authorized to carry a weapon to do so "in every location in this state" not otherwise excluded by law;

> provided, however, that *private property owners* or persons in legal control of *private property* through a lease, rental agreement, licensing agreement, contract, or any other agreement to control access to such *private property* shall have the right to exclude or eject a person who is in possession of a weapon or long gun on their *private property* . . . .[4]

But here, the subject property is *publicly* owned by the City of Atlanta, and is leased by Atlanta Botanical Garden, Inc., a private organization. So, under the plain meaning

---

[3] *Summerour v. City of Marietta*, 338 Ga. App. 259, 262 (788 SE2d 921) (2016) (punctuation and citation omitted), *affirmed in part and reversed in part on other grounds* by ___ Ga. ___ (807 SE2d 324) (2017); *see also* Paul J. Larkin, Jr., *The Original Understanding of "Property" in the Constitution*, 100 Marq. L. Rev. 1, 30 (III) (A) (2) (2016) ("Americans also sought to protect the property they acquired. If there was one issue on which most American Founders agreed, it was the importance of protecting private property rights") (punctuation and footnote omitted); John Locke, *The Second Treatise, Two Treatises of Government* § 124 (Peter Laslett ed., Cambridge Univ. Press 1960) (1698) ("The great and chief end, therefore, of Mens uniting into Commonwealths, and putting themselves under Government, is the Preservation of their Property."). *Cf.* OCGA § 51-9-1 ("The right of enjoyment of private property being an absolute right of every citizen, every act of another which unlawfully interferes with such enjoyment is a tort for which an action shall lie.").

[4] (Emphasis supplied).

of the statute's text, the Garden appears, at first blush, to be prohibited from excluding authorized individuals carrying weapons on its premises because it does not own and is not in legal control of *private property*.[5] But having carefully considered the longstanding Supreme Court of Georgia precedent relied upon by the majority, I am persuaded that the reasoning contained in those decisions applies with equal force in this statutory context, and, therefore, the trial court's judgment should be affirmed.

In this respect, the Supreme Court of Georgia, in *Columbus Board of Tax Assessors v. The Medical Center Hospital Authority*,[6] recently provided guidance

---

[5] This reading of OCGA § 16-11-127 (c) is bolstered by the statute's history. In 2010, the grant of authority to carry a weapon in every location in Georgia contained the following contingent exception:

> [P]rovided, however, that private property owners or persons in control of *property* through a lease, rental agreement, licensing agreement, contract, or any other agreement to control such *property* shall have the right to forbid possession of a weapon or long gun on their *property* . . . .

Former OCGA § 16-11-127 (c) (2010) (emphasis supplied).

As GeorgiaCarry rightly notes, this statutory language was notably "silent on whether the property being leased was public or private." But as noted *supra*, this changed in 2014, when the General Assembly replaced each of the three mentions of "property" italicized above with "private property."

[6] 302 Ga. 358 (806 SE2d 525) (2017).

3

regarding how to construe the term "public property" in OCGA § 48-5-41 (a) (1) (A), which exempts such property from property taxes, but does not define what constitutes public property.[7] In doing so, our Supreme Court did not simply hold that whether leased property is public or private is conclusively established by who *owns* the property without further inquiry.[8] Instead, the Court reasoned that, in determining whether a lessee holds a leasehold interest in public or private property, the pertinent question is whether the property is held for "public purposes in furtherance of the legitimate functions of [the public entity], rather than for private gain or income."[9] Ultimately, the Court concluded that "the mere fact that property is owned by [a public entity] does not exempt it from property taxes[.]"[10]

Although *Columbus Board of Tax Assessors*, as well as the cases it relies upon, were all decided in the context of construing taxation statutes,[11] I too see no

---

[7] *See id*. at 362-63 (2).

[8] *See id*.

[9] *Id*. at 362 (2) (punctuation and citation omitted).

[10] *See id*. at 362-63 (2) (punctuation omitted).

[11] *See id*.; *Hosp. Auth. of Albany v. Stewart*, 226 Ga. 530, 535 (175 SE2d 857) (1970) (holding that a hospital authority using "property exclusively for a declared public and governmental purpose, and not for private or corporate benefit or income, it is in effect an instrumentality of the State, and therefore the property [was] exempt

4

meaningful distinction that would support an alternative construction of "private property," which is the mirror image of "public property." Indeed, it would be a curious thing to deny an entity leasing public property the benefit of the City's tax exempt status while simultaneously requiring that lessee to permit gun owners on its property without consent. Thus, while it would otherwise be perfectly reasonable to construe "private property" in OCGA § 16-11-127 (c) to simply mean any property that is privately owned, I am persuaded by the reasoning contained in the precedent

---

from taxation to the same extent as if the legal title thereto was in the State itself or in a county or city"); *Delta Air Lines, Inc. v. Coleman*, 219 Ga. 12, 16 (1) (131 SE2d 768) (1963) ("When [a public entity] conveyed to [a private corporation] a leasehold estate in the land here involved, it completely disposed of a distinct estate in its land for a valuable consideration, and [the corporation] acquired it and holds it *as a private owner*. When any estate in public property is disposed of, it *loses its identity of being public property* and is subject to taxes while in private ownership just as any other privately owned property." (emphasis supplied)); *Sigman v. Brunswick Port Auth.*, 214 Ga. 332, 335 (2) (104 SE2d 467) (1958) (holding, in the context of considering whether private property leased to a public entity was subject to property taxes, that "property may be public property so as to come within the exemption from taxation *although the legal title is not in the State*, the county, or a municipality" (emphasis supplied)). As explained by the majority, "when we are interpreting a statute, we must presume that the General Assembly had full knowledge of the existing state of the law and enacted the statute with reference to it." *Chase v. State*, 285 Ga. 693, 695 (2) (681 SE2d 116) (2009). Thus, we must presume that when the General Assembly last amended OCGA § 16-11-127 (c), it was aware of how the Supreme Court of Georgia had been construing other statutes when determining what constituted public or private property and chose not to provide alternative definitions for those terms.

5

highlighted by the majority and agree that we must evaluate how the subject property is actually being *used* in this case, rather than simply consider whether that property is privately or publicly *owned*. I agree with the majority, then, that the subject property is private for purposes of OCGA § 16-11-127 (c) because it is being operated solely for "private gain or income," rather than for "public purposes."[12] And while I am largely in agreement with the logic and reasoning underlying the Supreme Court of Georgia decisions relied upon by the majority, I am somewhat sympathetic to GeorgiaCarry's contention that this line of precedent is squarely at odds with the plain meaning and statutory history of OCGA § 16-11-127 (c). That said, while I find GeorgiaCarry's textualist argument attractive, the Metro Atlanta Chamber, as *amicus curiae*, presents a compelling argument that GeorgiaCarry's interpretation of OCGA § 16-11-127 ( c ) raises serious constitutional concerns and presents a strong case for applying the constitutional-doubt canon[13] to the statute—*i.e.*, any interpretation that

---

[12] *Columbus Bd. of Tax Assessors*, 302 Ga. at 362 (2).

[13] *See Stone v. Stone*, 297 Ga. 451, 455 (774 SE2d 681) (2015) (holding that "statutes should be interpreted to avoid serious constitutional concerns where such an interpretation is reasonable"); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 247 (1st ed. 2012) (noting that the constitutional-doubt canon "militates against not only those interpretations that would render the statute unconstitutional but also those that would even raise serious questions of constitutionality").

6

denies a private entity in possession of leased property the right to exclude or eject persons carrying weapons is likely to run afoul of the Takings Clauses of the federal and Georgia constitutions,[14] as well as the Due Process Clauses of the federal and Georgia constitutions.[15]

For all these reasons, I concur fully and specially in the majority's opinion.[16]

I am authorized to state that Presiding Judge Ellington joins in this concurrence.

---

[14] *See* U.S. CONST. amend. V (" . . . nor shall private property be taken for public use, without just compensation."); GA. CONST. art. I, § 3, ¶ 1 (" . . . private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid.").

[15] *See* U.S. CONST. amend. XIV, § 1 (" . . . nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ."); GA. CONST. art. I, § 1, ¶ 1 ("No person shall be deprived of life, liberty, or property except by due process of law.").

[16] Because I fully join the majority opinion, it is binding precedent under Court of Appeals Rule 33.2.