**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 28, 2023**

# In the Court of Appeals of Georgia

A23A0373. COLUMBUS, GEORGIA BOARD OF TAX ASSESSORS et al. v. THE MEDICAL CENTER HOSPITAL AUTHORITY.

MARKLE, Judge.

This is the second appearance of this case before the Court.[1] The Medical Center Hospital Authority ("the Authority") sued the Columbus Board of Tax Assessors ("the Board"), seeking a declaration that its leasehold interest in certain property, known as Spring Harbor at Green Island ("Spring Harbor"), was exempt from ad valorem taxation. As is relevant to the current appeal, the trial court granted summary judgment to the Authority, and we affirmed. *Columbus, Ga., Bd. of Tax Assessors v. The Med. Center Hosp. Auth.*, 338 Ga. App. 302 (788 SE2d 879) (2016)

---

[1] This Court previously addressed a substantially similar issue regarding tax exemptions between these same parties in relation to different properties. Although appealed, the Georgia Supreme Court denied certiorari in that case.

(physical precedent only) ("*Columbus I*"). Our Supreme Court granted certiorari, reversed our decision, and remanded for the trial court to reevaluate its summary judgment decision. *Columbus Bd. of Tax Assessors v. The Med. Center Hosp. Auth.*, 302 Ga. 358 (806 SE2d 525) (2017) ("*Columbus II*"). On remand, the trial court again entered summary judgment in favor of the Authority, and the Board now appeals that decision. The sole issue for the trial court's determination on remand was whether the Authority's leasehold interest in Spring Harbor under the lease agreement is exempt from ad valorem taxation as "public property." *Columbus II*, 302 Ga. at 363 (2). For the reasons that follow, we affirm the trial court's grant of summary judgment to the Authority.

> In order to prevail on a motion for summary judgment under OCGA § 9-11-56, [the Authority], as the moving party must show that there exists no genuine issue of material fact, and that the undisputed facts, viewed in the light most favorable to the nonmoving party, demand judgment as a matter of law. Moreover, on appeal from the denial or grant of summary judgment the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Citation omitted.) *Lowery v. Noodle Life*, 363 Ga. App. 1 (869 SE2d 600) (2022).

Our Supreme Court succinctly describes the factual and procedural background of this case in *Columbus II.* 302 Ga. at 358-362 (1). Accordingly, we set forth here those facts specific to this appeal. So viewed, the record shows that, in June 2004, non-party Columbus Regional Healthcare System, Inc., ("Columbus Regional") and the Authority entered into a long-term lease agreement that indicated the Authority's intent "to construct, own, and operate" Spring Harbor,[2] on land Columbus Regional owned. Spring Harbor would remain in the Authority's control and ownership through the duration of the lease. The Authority also entered into a management agreement with another private subsidiary of Columbus Regional to develop, market, and manage the operation of Spring Harbor on behalf of the Authority.[3] See *Columbus* I, 338 Ga. App. at 302-304. At lease end, Spring Harbor and all improvements to the land would become the property of Columbus Regional.

That same year, the Authority issued revenue bonds to finance construction of Spring Harbor, and the trial court validated the financing of the Authority's bonds,

[2] Spring Harbor is a continuing care residential retirement community for the elderly.

[3] OCGA § 31-7-75 (23) vests the Authority with "all the powers necessary or convenient to carry out and effectuate the purposes and provisions of this article, including,. . . [t]o contract for the management and operation of the project by a professional hospital or medical facilities consultant or management firm."

finding that they were being issued in furtherance of public purposes. The bonds were refinanced in 2007, and the trial court again validated them.[4] At the same time, the trial court issued conflicting findings as to Spring Harbor's public use, determining it could not rule as a matter of fact and as a matter of law that Spring Harbor would only benefit the Authority and the public, as opposed to any private entity. *Columbus II*, 302 Ga. at 360 (1) (b). It, nevertheless, validated the refinancing, finding that the project itself served a public purpose as contemplated under the Hospital Authorities Law. Id.

Over the next several years, the Board sent the Authority a bill for its property tax obligation, including taxes for all improvements made to the land. The Board also taxed Columbus Regional on its reversionary interest in Spring Harbor, which Columbus Regional paid. The Authority refused to pay the taxes on Spring Harbor on the ground that its property interest in Spring Harbor was exempt from ad valorem property taxes, and it subsequently filed an action for declaratory judgment and injunctive relief. The parties then filed cross-motions for summary judgment, with the Authority asserting that its leasehold interest was exempt from ad valorem taxes pursuant to OCGA § 48-5-41 (a) (1) (A).

---

[4] The trial court's bond validation rulings were not appealed.

The trial court granted the Authority's motion, and the Board appealed this decision to this Court. We affirmed the trial court's grant of summary judgment, determining that the prior bond validation orders were conclusive on the question of ownership and taxation.[5] *Columbus I*, 338 Ga. App. at 305. Our Supreme Court reversed our decision on the ground that the prior bond validation orders were not conclusive on the question of taxability, and remanded the case to the trial court to reconsider its grant of summary judgment to the Authority. *Columbus II*, 302 Ga. at 362-363 (2).

On remand, the trial court again granted summary judgment in favor of the Authority, finding that the Spring Harbor improvements were tax exempt "public property." In so finding, the trial court acknowledged the Supreme Court's directive that the correct standard for determining whether the Authority's leasehold interest is exempt as public property was established by its decision in *Hosp. Auth. of Albany v. Stewart*, 226 Ga. 530, 537 (175 SE2d 857) (1970), and *Sigman v. Brunswick Port*

---

[5] In our prior opinion, however, we included a footnote that "[w]e therefore do not reach the question whether Georgia law authorizes an institution dedicated to serving wealthy individuals to be deemed a public project. Perhaps so. Perhaps not. But if so, the practice of hospital authorities entering lease agreements with private entities is now at some remove from the wellspring of its constitutional legitimacy." (Citations omitted.) *Columbus I*, 338 Ga. App. at 307 (2) (b), n. 1.

*Auth.*, 214 Ga. 332, 335 (104 SE2d 467) (1958); both holding that a hospital authority's interest in real property is "public property" for the purpose of ad valorem taxation so long as the property itself and its income serves the legitimate functions and purposes of the hospital authority. The trial court found that the revenue bonds issued to finance construction of Spring Harbor were in furtherance of the public purpose for which the Authority was established, and that Spring Harbor was a public project addressing a public need for an identifiable class of citizens; that Spring Harbor is exclusively under the Authority's control and ownership during the duration of the lease; the Board separately assessed the value of Spring Harbor as an improvement to the land, and issued a separate tax bill to the Authority on the improvements only with Columbus Regional paying property taxes on its fee simple reversionary interest in the real property; that the Authority entered into a management agreement with Columbus Regional to provide daily management of Spring Harbor on the Authority's behalf; and that Spring Harbor's audited financial statements for fiscal years ending 2006 treated the operating profits as those of the Authority. The trial court thus found Spring Harbor exempt from ad valorem taxes as public property because the Authority's leasehold interest in Spring Harbor must be severed from the fee simple interest for ad valorem tax purposes; the nature of the

6

holder of a leasehold interest is controlling in determining if the leased premises is public or private property for the duration of the lease; and that the Authority holds its leasehold interest in Spring Harbor in furtherance of its legitimate functions and not for private gain or income. The Board now appeals, contending that the trial court erred in that conclusion.

In its sole enumeration of error, the Board contends the trial court erred in granting summary judgment in the Authority's favor because Spring Harbor cannot be considered public property for the purpose of ad valorem taxation where its operational and financial structure is such that it is owned and managed by Columbus Regional, a private entity. It further argues that because ownership of Spring Harbor will revert back to Columbus Regional at the end of the lease, and not to the Authority, the ultimate beneficiary is a private entity rather than the public, and the General Assembly's intent was not to extend public tax-exempt status to a private entity in this way. We conclude the trial court properly found that the Authority's leasehold interest is "public property" exempt from ad valorem taxes.

Under Georgia law, it is clear that all public property is exempt from ad valorem property taxes. OCGA § 48-5-41 (a) (1) (A). OCGA § 31-7-75 (7) further provides that

7

[e]very hospital authority shall be deemed to exercise public and essential governmental functions and shall have all the powers necessary or convenient to carry out and effectuate the purposes and provisions of this article including, . . . [the power [t]o lease . . . any project, [that] will promote the public health needs of the community[.]

However, "[n]o authority shall operate or construct any project for profit." OCGA § 31-7-77 (a).

On remand, our Supreme Court made clear that the prior "bond validation proceedings did not conclusively establish whether the leasehold interest of the Hospital Authority is 'public property' for tax purposes," and it charged the trial court with "draw[ing] its own conclusions about taxability." *Columbus II*, 302 Ga. at 363 (2). In so doing, the Supreme Court set the framework for the trial court's analysis, holding that

[t]he question of whether a hospital authority's property interest qualifies for ad valorem tax exemption as 'public property' is a separate and distinct question from the issues presented in a bond validation proceeding. Instead, the standard to be applied in order to determine whether a hospital authority's property interest qualifies as 'public property' is set forth in our decisions in *Stewart* and *Sigman*. Consequently, the bond validation proceedings did not conclusively

8

establish whether the leasehold interest of the Hospital Authority is 'public property' for tax purposes[.]

*Columbus II*, 302 Ga. at 363 (2). It explained that "the question in this case is whether the Hospital Authority holds the leasehold interest for 'public purposes . . . in the furtherance of the legitimate functions of the hospital authority,' rather than for 'private gain or income.'" Id. at 362 (2).

> In looking to the standard to be applied, the Supreme Court in *Sigman* held that
>
> [i]f the project under attack is for public purposes, . . . then the property may be exempted from taxation, and its bonds, being instrumentalities of government, are nontaxable. Property may be public property so as to come within the exemption from taxation although the legal title is not in the State, the county, or a municipality.

(Citations and punctuation omitted.) *Sigman*, 214 Ga. at 335 (2).

Some years later, the Supreme Court reiterated in *Stewart* that real property held and owned by a public hospital authority is public property and exempt from ad valorem taxation where the income derived from the property is properly devoted to public purposes and furthers the legitimate functions of the hospital authority. 226 Ga. at 531-532, 539.

9

And, as this Court previously observed on appeal, "the mere fact that property is owned by a Hospital Authority does not exempt it from property taxes. [But] the property need not actually contain a healthcare facility to be exempt, as long as the use of the property or its income furthers 'the legitimate functions of the hospital authority,'" including providing heath care services. (Citation omitted.) *Columbus I*, 336 Ga. App. at 752 (1).

Based on the standards set forth above, the trial court properly concluded that the Authority's leasehold interest in Spring Harbor constitutes public property exempt from ad valorem taxation, and the Authority was therefore entitled to summary judgment. As the record shows, and as the trial court specifically found, Spring Harbor is a continuing care residential retirement community, providing the elderly with room and board and nursing care, addressing "a public need of an identifiable class of citizens," and thus is a project contemplated under Hospital Authority laws. According to the provisions of the ground lease, Spring Harbor holds exclusive control and ownership of the Authority through the duration of the lease. The bond validation proceedings, while not conclusive on the issue of taxability, did factually establish that the Authority financed and paid for the construction of Spring Harbor through revenue bonds issued in furtherance of the public purpose for which the

10

Authority was established. See Ga. Const. of 1983, Art. IX, Sec. VI, Par. IV; see also *Ambac Indem. Corp. v. Akridge*, 262 Ga. 773, 774 (1) (425 SE2d 637) (1993) (where no appeal was taken from the judgment validating the bonds and the judgment is affirmed on appeal, the superior court's judgment confirming the bonds is conclusive and not subject to collateral attack). Also, Spring Harbor's audited financial statements for fiscal years ending 2006 has treated the operating profits as those of the Authority, and the income derived from operating Spring Harbor is used to repay the bonds. Thus, Spring Harbor is property held by the Authority, used for a public need, and its income derived therefrom is properly devoted to public purposes and in furtherance of the legitimate functions of the Authority. *Sigman*, 214 Ga. at 335 (2); *Stewart*, 226 Ga. at 531-532, 539. It is therefore exempt from ad valorem taxation as public property.

Moreover, as the trial court noted, the fact that the Authority held only a leasehold interest in Spring Harbor does not alter this outcome. "A leasehold is an interest in the land less than the fee; it is severed from the fee and is classified for tax purposes as realty under OCGA § 48-5-3." *Douglas County v. Anneewakee, Inc.*, 179 Ga. App. 270, 274 (3) (346 SE2d 368) (1986), citing *Delta Air Lines v. Coleman*, 219 Ga. 12, 16 (1) (131 SE2d 768) (1963). As the case law makes clear, even where the

11

Authority does not hold fee simple title to the property, this does not negate the Authority's tax-exempt status of its property interest as "public property." *Sigman*, 214 Ga. at 335 (2). In other words, the Authority does not have to own the real estate to be entitled to public property tax exempt status. The Authority's leasehold interest in the real property can still be exempt from property taxes based on an exemption to which only the Authority is entitled. Cf. *Anneewakee*, *Inc.*, 179 Ga. App. at 274 (3); see also *GeorgiaCarry. Org, v. Atlanta Botanical Garden*, 306 Ga. 829, 836-839 (3)(834 SE2d 27) (2019) (analyzing *Delta Air Lines v. Coleman*, *Anneewakee, Inc.*, and *Columbus II*, in holding that, with regard to a leasehold interest, the public or private nature of property depends on the holder of the leasehold interest). Therefore, as a public entity, the Authority's leasehold interest in Spring Harbor controls, and thus, as established above, Spring Harbor is public property for taxation purposes.

Accordingly, the Authority's leasehold interest in Spring Harbor under the lease agreement is exempt from ad valorem taxation as "public property," and thus we affirm the trial court's grant of summary judgment to the Authority.[6]

*Judgment affirmed. McFadden, P. J., concurs. Brown, J., dissents*.

---

[6] Based on our conclusion here, we need not address whether Spring Harbor is likewise exempt as a home for the aged. See *Columbus, Georgia Bd. of Tax Assessors v. Med. Center Hosp. Auth.*, 345 Ga. App. 544, 545 (813 SE2d 786) (2018).

1

# In the Court of Appeals of Georgia

BROWN, Judge, dissenting.

I respectfully dissent because I would conclude that genuine issues of material fact preclude entry of summary judgment in favor of The Medical Center Hospital Authority ("the Authority") on the "public property" exemption from ad valorem property taxation. In *Columbus Bd. of Tax Assessors v. Med. Center Hosp. Auth.*, 302 Ga. 358 (806 SE2d 525) (2017), the Supreme Court of Georgia reiterated:

> When property is not held by the State itself, but by an instrumentality such as a hospital authority, whether it is "public property" depends on whether the instrumentality "holds title *only* for the benefit of the State and the public." Put another way, the question in this case is whether the Hospital Authority holds the leasehold interest for "public purposes in the furtherance of the legitimate functions of the hospital authority," rather than for "private gain or income." [T]he mere fact that property

is owned by a [h]ospital [a]uthority does not exempt it from property taxes.

(Citations and punctuation omitted; emphasis supplied.) Id. at 362-363 (2). Based on the record before us, I cannot say that the undisputed facts show that the Authority holds title to its leasehold interest *only* for the benefit of the State and the public. Accordingly, I would reverse the trial court's grant of summary judgment.[1]

---

[1] I note that the appellants' cross-motion for summary judgment in their favor is not presently before us.